Life Printing and Publishing Company, Inc., Appellant, v. Marshall Field III, The Chicago Sun Syndicate, Inc., Trading as the Chicago Sun et al., Appellees.

Gen. No. 43,167.

Opinion

filed December 11, 1944. Released for publication December 27, 1944.

IRVING BREAKSTONE, of Chicago, for appellant.

MAYER, MEYER, AUSTRIAN & PLATT, of Chicago, for appellees; JACOB X. SCHWARTZ, of Chicago, of counsel.

MR. PRESIDING JUSTICE NIEMEYER delivered the opinion of the court.

Plaintiff appeals from an order dismissing its action for libel upon motion of defendants, charging the insufficiency of the amended complaint on which plaintiff elected to stand.

This complaint alleges that plaintiff is engaged in the business of publishing three community newspapers, having an average circulation of 32,000 copies per issue and doing circular printing; that its office and principal place of business is at No. 5304 W. 25th street, Cicero, Illinois; that one of the papers published is the Cicero Life, a tri-weekly newspaper which did an annual gross business of $261,232.50 in 1943; that the plaintiff had a good name, credit and reputation and deservedly enjoyed the esteem and good opinion of those with whom it did business and of other worthy citizens of the state, as well as the patronage

and good will of a large number of advertisers and persons requiring circular printing, including among its patrons and heaviest advertisers many merchants of Jewish descent and members of that faith owning and controlling business firms and corporations doing business with plaintiff; that between plaintiff and its customers existed mutual esteem, good credit and profitable business relations; that plaintiff's property, affairs and concerns were conducted and managed by directors and officers (none of whom are named), including its president, secretary and vice president, who along with plaintiff were in high and deserved repute, estimation and credit with the public, and were doing a profitable and increasing business and were then and there daily acquiring and had acquired large gains and profits from the business; that the defendant Marshall Field III, owner and editor, along with The Chicago Sun Syndicate, Inc., and Silliman Evans, publisher, printed and published The Chicago Sun, a newspaper of large circulation; that on February 4, 5 and 7, 1944, defendants, with the intent of exposing the Gentile Cooperative Association and to impair and damage plaintiff in its business, affairs and concerns, and more especially with its patrons of Jewish descent, and to discourage advertisers, especially those merchants of Jewish descent, from extending their patronage to the plaintiff, and the public from subscribing to and reading its newspapers and from having printing done in its plant, published certain articles (set out *verbatim*) charging that the publisher of the Cicero Life, meaning plaintiff, caused to be incorporated a nefarious and despicable organization known as Gentile Cooperative Association; that the defendants maliciously and recklessly published said articles of and concerning the plaintiff in its business, and that such publications were understood by the readers thereof and the public as identifying the plaintiff and meaning that the plaintiff was engaged in a conspiracy with Flitcraft,

Ferree and Nolen, incorporators of the Gentile Co-operative Association, and others behind it, as "fellow conspirators to spread the described propaganda therein set forth over the United States, in violation of the criminal law against conspiracy, seeking to undermine the faith of the people in their leaders, and to cause unrest and lack of faith in democracy among the members of the armed forces, . . . so that when the proper economic and political disintegration had been accomplished, selected persons in strategic positions would, then acting together, seize power and establish their 'new order,' to-wit a national socialist or fascist form of government''; that by reason of the text of the foregoing publications and the libel therein contained, large numbers of advertisers, actual and potential, and especially those of Jewish descent and firms and corporations controlled by persons of Jewish descent, of plaintiff's publications and more especially the Cicero Life, and the subscribers and patrons thereof, believed on the reading thereof that plaintiff was identified therewith and was one of the founders and promoters of the Gentile Co-operative Association and one of its incorporators, and that as a result of the acts of the defendants, plaintiff has been and is greatly injured in its good name, credit, reputation and in its business, trade and occupation, and "as special damages, it has as a result of said libel suffered in that many advertisers and persons have been hindered and prevented from advertising in the publications of the plaintiff, and especially Cicero Life, and from having printing done in plaintiff's plant and from subscribing to and reading its newspapers, and have declined and refused to have any transactions with the said plaintiff in the way of its business, and more especially persons of Jewish descent, and from all of whom the plaintiff would, have and except for said libel, have obtained great gains and profits,'' and demands judgment in the sum of $100,000 special damages, $100,000 punitive

damages, and compensatory damages of $100,000, or a total of $300,000.

The several publications complained of appeared under the following headings: "PROMOTER WOULD 'PROTECT' GENTILES AT $100 A HEAD. Anti-Semitic Purposes Hidden in State Charter, But Opposition to 'Jewish Control' is Admitted''; "LEADERS OF ALL CITY GROUPS BLAST GENTILE ASSOCIATION. Everyone Denounces 'Screwball' Promotion Aimed at Halting 'Rising Jewish Power' ''", and "McMAHON FLAILS 'GENTILE' SOCIETY. Mayor Indignant Over Aims of Group,'' and said in substance that an ambitious new scheme, described by the promoters as aimed at getting up to as much as $100 from as many as 5,000,000 Americans, has been launched in Chicago in the form of a Gentile Co-operative Association; that the first application for the charter was turned down by the Secretary of State, but a charter was granted on a new application defining the purposes of the group as promoting various "gentile objectives''; that Eugene F. Flitcraft, the organizer, is a director of several printing and advertising firms and was formerly secretary and treasurer of Contemporary Publications, which published the National Magazine for Young Republicans until 1936, when it went out of business; that Marvin Ferree, named as an incorporator living at 915 Carmen avenue, actually lives at 5304 W. 25th street, Cicero, and is publisher of Cicero Life, a community newspaper; that the owner of the apartment building at 915 Carmen avenue says that Ferree never lived at that address; that John M. Nolen, the third incorporator, resides at 316 Madison street, Maywood, and is publisher of the Maywood newspaper New Era; that Flitcraft said he started the movement to "halt growing Jewish power'' in the United States; that he expects to step out of the directorship as soon as the movement gets going, and that "others are behind it'' and would keep it going; that a hurry-up appeal for funds would be

sent out and the recipients of the appeal urged to act fast for the preservation of gentiles; that no more than $100 would be taken from any person and memberships were as low as $2; that everyone who joins will get a copy of the Gentile News, publication of which has not started; that they plan to help ex-soldiers, to start a lending pool to help businessmen who might otherwise have to sell out to Jewish interests, to correct the business practice of gentiles, promote a "gentile peace," with special aid in getting jobs back for gentiles after the war, and promote gentile control of "business, social and cultural responsibilities"; that ministers, public officials, labor and civic leaders who were interviewed charged the organization with playing Hitler's game and being a dangerous expression of distorted and un-American thinking, a vicious and dangerous racket, representing the ideologies of our enemies, the Nazi and the Japs, and that the fellows running it should be "salted away as traitors to America."

Plaintiff says that these articles in substance "charge the plaintiff with being one of the incorporators and founders of an anti-Semitic organization formed for the purpose of opposing 'Jewish Control' and 'to halt growing Jewish power' and 'Protect Gentiles at $100 a Head,' " and contends that the articles are libelous *per se,* or, in the alternative, that plaintiff has sustained special damages by reason of their publication and that these damages are properly pleaded. In support of its contention that the publications are libelous *per se* plaintiff relies principally upon the case of *Sweeney v. Schenectady Union Pub. Co.,* 122 F.2d 288, decided by U.S.C.C.A., 2nd Cir. (Justice CLARK dissenting), and affirmed without opinion by an equally divided court in 316 U. S. 642. The publication complained of was a syndicated article published in many newspapers throughout the country. It charged the plaintiff, a congressman, with opposing the

appointment of a United States District Attorney at Cleveland, Ohio, to a federal judgeship because he "is a Jew, and one not born in the United States." . The plaintiff instituted a number of actions and, so far as we are advised, it was only in the case cited that the article was held to be libelous *per se*. In the following cases Sweeney's contentions were denied: *Sweeney v. Patterson,* 128 F.2d 457; *Sweeney v. Philadelphia Record Co.,* 126 F.2d 53; *Sweeney v. Newspaper Printing Corp.,* 177 Tenn. 196; *Sweeney v. Beacon Journal Pub. Co.,* 66 Ohio App. 475; *Sweeney v. Caller-Times Pub. Co.,* 41 F. Supp. 163; *Sweeney v. Capital News Pub. Co.,* 37 F. Supp. 355. We are not required to choose between these conflicting positions. Plaintiff being a corporation, no question of personal reputation can be involved, and the defamation must assail its financial position, its business methods, or accuse it of fraud or mismanagement. 33 Am. Jur., Libel and Slander, § 193, pages 183, 184, citing *National Refining Co. v. Benzo Gas Motor Fuel Co.,* 20 F.2d 763, and *Axton-Fisher Tobacco Co. v. Evening Post Co.,* 169 Ky. 64. Words spoken or written of a stockholder or officer give no right of action to the corporation unless spoken or written in direct relation to the trade or business of the corporation. If they relate solely to the stockholder, officer or employee in his private or personal capacity, only the individual can complain. *Brayton v. Cleveland Special Police Co.,* 63 Ohio St. 83; *Adirondack Record, Inc. v. Lawrence,* 202 App. Div. 251, 195 N. Y. S. 627; *Midland Pub. Co. v. Implement Trade Journal Co.,* 108 Mo. App. 223; *Memphis Tel. Co. v. Cumberland Tel. & Tel. Co.,* 145 Fed. 904; *Willfred Coal Co. v. Sapp,* 193 Ill. App. 400, 405, 414. In the case last cited the alleged libel stated that the mine of plaintiff had been closed by a state inspector for failure to comply with the safety statutes; that Jones, the president, had been made defendant in a criminal action charging him with operat-

ing the mine without proper boiler inspection and was in hiding; that the business of the company had been wrecked; that it was unable to meet its payrolls and an employee had brought suit for his wages; the declaration alleged plaintiff's employment of Jones as president and manager, and that Jones "had and enjoyed among the said customers of said plaintiff a good reputation for honesty and fair dealing and skilful management of the business of said plaintiff, and the said confidence and esteem in which the said Jones was held by the said customers of the plaintiff increased and extended and maintained the business of the said plaintiff, as aforesaid, and thereby greatly increased the profit which said plaintiff derived from the said business...." A demurrer to the declaration was sustained. In an opinion citing and examining many cases the court reversed the judgment and held that the statements relating to Jones, as well as those relating to the corporation, were libelous *per se* as to the corporation, and said (414): "Defendants in error treat the case as though the defamatory statements complained of related solely to the president and manager of the plaintiff in his private or personal capacity. If this were true, their position would be well taken, as held in *Brayton v. Cleveland Special Police Co.,* 63 Ohio St. 83, and *Midland Pub. Co. v. Implement Trade Journal Co.,* 108 Mo. App. 223. But here the article complained of not only relates to the corporation itself, and its trade, business and credit, but many of its statements in regard to the president and manager are in direct relation to the trade or business of the corporation and its control and management by him as such officer and manager."

The alleged libelous publications before us do not mention the plaintiff. It is identified only by the innuendoes in the amended complaint. Where Flitcraft, organizer of the Gentile Co-operative Association, is described as "director of several printing and ad-

vertising firms,'' plaintiff adds, ''meaning, of the plaintiff corporation printing firm.'' And where Flitcraft is reported as saying ''others are behind it,'' plaintiff supplies by way of innuendo, ''meaning, the plaintiff and the Cicero Life.'' In respect to Ferree, the innuendoes appear in parentheses in the following quotation from one of the articles: ''Ferree actually lives at 5304 W. 25th St., Cicero (meaning and being the office and plant of the plaintiff herein), and is the publisher of Cicero Life, a community newspaper (meaning the plaintiff corporation doing business as Cicero Life; meaning that said odious Ferree was the publisher of Cicero Life, an employee of plaintiff as such publisher, and in his managing capacity in behalf of plaintiff an incorporator of said odious Gentile Co-operative Association and the promotion of its affairs in line with the business activities of the plaintiff herein and so understood by the public).'' Except for the allegations that plaintiff's office and principal place of business is at 5304 W. 25th St., Cicero, and that it publishes the Cicero Life, there are no averments of facts to support these innuendoes connecting plaintiff with the alleged libelous publications. The limitations of an innuendo are stated in *McLaughlin v. Fisher,* 136 Ill. 111, 116, as follows: ''It is not permissible to enlarge and extend the meaning of the words spoken, beyond their natural import, by the innuendo, except so far as such enlarged meaning is warranted by prefatory matter set forth in the inducement or colloquium. An innuendo is properly used to point the meaning of the words alleged to have been spoken, in view of the occasion and circumstances, whether appearing in the words themselves, or extraneous prefatory matters alleged in the declaration. It is explanatory of the subject matter sufficiently already stated, and it cannot extend the natural meaning of the words unless there is something averred in the prefatory part of the declaration for it to explain, or to which it may properly extend them.

Starkie on Slander, (Wood's notes,) *355; Townshend on Slander, 161, note, and authorities cited." *Kimball v. Ryan,* 283 Ill. App. 456, 465–466; *Campbell v. Morris,* 224 Ill. App. 569. Plaintiff's claim must rest upon the statements relating to Ferree's residence and his engagement and occupation as publisher of Cicero Life. The language used by defendants is plain and unambiguous, and it was a question for the court whether the language is capable of bearing the meaning assigned by the innuendoes. *Herrick v. Tribune Co.,* 108 Ill. App. 244 (citing Townshend on Slander and Libel, § 342); *Hylsky v. Globe Democrat Pub. Co.,* 348 Mo. 83; *Kee v. Armstrong, Byrd & Co.,* 75 Okla. 84, 182 Pac. 494, 499; *Mellen v. Times-Mirror Co.,* 167 Cal. 587. The articles complained of were published to expose and denounce the Gentile Co-operative Association and its founders and promoters. Plaintiff concurs in the denunciations. The statements as to the residence of Ferree and his occupation as publisher of Cicero Life were merely incidental and for the purpose of identifying him. On the motion to dismiss and on this appeal these statements must be regarded as untrue. However, there is not the slightest intimation of any wrongdoing or impropriety of conduct at the alleged residence or in connection with his alleged occupation as publisher of the Cicero Life. Whatever is said derogatory to Ferree is in connection with the Gentile Co-operative Association and his part as an incorporator of it. Nothing is said of Ferree or of Flitcraft in relation to the business of plaintiff corporation, and the publications complained of are not libelous *per se* as to plaintiff.

Plaintiff cannot recover on its theory of special damages, which as shown above are based on general allegations that many advertisers and other persons, and especially persons of Jewish descent, have, because of the publications complained of, declined and refused to have any business transactions with plaintiff, and loss

has resulted to plaintiff. This is not a sufficient allegation of special damages. Such damages must be alleged with particularity. *Parker v. Kirkland,* 298 Ill. App. 340; *Wright v. F. W. Woolworth Co.,* 281 Ill. App. 495; *Thorner v. Samuels,* 122 Misc. 139, 203 N. Y. S. 316; *Erick Bowman Remedy Co. v. Jensen Salsbery Laboratories, Inc.,* 17 F.2d 255, 259; *Denney v. Northwestern Credit Ass'n,* 55 Wash. 331; *Shaw Cleaners & Dyers v. Des Moines Dress Club,* 215 Iowa 1130; *Wilson v. Dubois,* 35 Minn. 471; *Maas v. National Casualty Co.,* 97 F.2d 247; Newell on Slander & Libel (4th ed.), page 841.

The amended complaint sufficiently charges responsibility of The Chicago Sun Syndicate, Inc., and Silliman Evans, defendants, for the several publications complained of in that it charges all the defendants with publishing and causing to be published each of the publications (*Hotz v. Alton Telegraph Printing Co.,* 324 Ill. App. 1), and is unlike the complaint in *Kulesza v. Chicago Daily News, Inc.,* 311 Ill. App. 117.

The judgment is affirmed.

*Affirmed.*

MATCHETT and O'CONNOR, JJ., concur.