Maurice Parmelee, Appellant, v. Hearst Publishing Company, Inc., Appellee.

Gen. No. 45,105.

Heard in the third division of this court for the first district at the April term, 1950. Opinion filed June 30, 1950. Released for publication July 25, 1950.

Elmer Gertz, of Chicago, for appellant.

Poppenhusen, Johnston, Thompson & Raymond, of Chicago, for appellee; Floyd E. Thompson and Roger W. Barrett, both of Chicago, of counsel.

Mr. Justice Kiley delivered the opinion of the court.

This is a libel action based on an article written by Westbrook Pegler and published by defendant in The Chicago Herald-American. Counts two and three in the original complaint were stricken on defendant's motion. The amended complaint of two counts was filed November 9, 1949. The amended count two was dismissed on defendant's motion, plaintiff elected to stand, and judgment was entered for defendant, on count two and plaintiff has appealed.

Defendant's motion admitted the facts hereinafter set forth. Plaintiff was on or before June 2nd, 1948 a resident of Chicago, Illinois employed as an economist by the Railroad Retirement Board. He was a reputable author, lecturer and authority in economics and other social sciences, and a member of national and international professional scientific organizations. He was not a Communist nor adherent to the Communist Party, had not been convicted of any crime, had not engaged in or advocated depravity, and had not written any depraved books. Defendant at the time was

341

publisher of The Chicago Herald-American circulated in Chicago, throughout Illinois, and in other cities and states, and also published other newspapers of large circulation in other large cities, in the United States.

On or about June 2nd, 1948 there were in Cook County numerous members of the Communist Party. The common belief in Cook County and elsewhere was that Communists and their "fellow-travelers" were not loyal citizens of the United States but were seeking unlawfully by force to overthrow the constitutional government of, and impose Communism on, the United States. This common belief is expressed in Federal and Illinois legislation enacted just before, during, and since the entry of the United States in World War II. Regulations promulgated under the legislation have given further expression to the common belief. The result was that on or about June 2, 1948, the name or designation Communist, Communist sympathizer, etc., tended to injure the reputation of any person to whom it was applied and to expose that person to public suspicion, hatred, contempt, and financial injury.

Plaintiff alleged that notwithstanding that factual background defendant, with the malicious intention of harming him in his profession, employment, and reputation, published a false defamatory article by Pegler; that the article was intended to mean and was reasonably understood by the readers to mean that he was a Communist, etc., had been arrested for crime, and was engaged in writing and distributing depraved books and advocating depraved practices; and that as a result of the article, his reputation for patriotism had been impugned, his professional standing jeopardized, his employment made insecure, his name, reputation, and credit injured, his income lessened, and that he was required to incur obligations for legal fees and expenses.

The motion to dismiss asserted that there was a failure to state a cause of action for words actionable *per se* or actionable *per quod;* no allegation showing special damages, financial injury, or malice, nor that the words were written of plaintiff in his business or profession, nor that any statement was made with intent to injure plaintiff's name or reputation or to induce public hatred of him; and that the article dealt with a matter of public interest and was fair comment and criticism.

 In *Dilling v. Illinois Publishing Co.,* 340 Ill. App. 303, recently decided by this Court, several general rules of law pertaining to libel were set forth with authorities: The article is to be read as a whole and the words given their natural and obvious meaning. Where the words are not ambiguous, the question is for the Court whether the words are capable of conveying the meaning attributed to them by plaintiff. The words are to receive an innocent construction if it can be reasonably given them. Other pertinent rules are that where the plaintiff alleges that the words in the article are libelous *per se,* the innuendo in the complaint must be considered as surplusage (*Schmisseur v. Kreilich,* 92 Ill. 347) and is not admitted by a motion to dismiss (*Campbell v. Morris,* 224 Ill. App. 569).

The article is under Pegler's name with the date line "Washington, June 2–." It is divided by asterisks and triple spacings into three parts. The first part has eight, the second six, and the third three, paragraphs. The first two paragraphs of the first part tell of the scandal, humiliation, and reproach visited upon a government employee whose daughter had become a Communist. The third paragraph states that the parent worked in the Department of Commerce and that though he was blameless, the Department had freely given to the Soviet Government copies of all patents which it wanted at a small cost. It

then states that in this Department Henry Wallace "planted" one March. It goes on to say that when Wallace was Secretary of Agriculture and later Head of the Board of Economic Warfare, he provided two jobs for a "nudist." It then says that "this one" wrote such disgusting books that he was "pinched" for trying to import them into this country. In the same paragraph a sentence is added that if "this were the only such creature" who could be found associating with Wallace or under his patronage in the government that might be an accident but that he wasn't the only one. The next paragraph implies that plaintiff was questionable on nasty grounds and compares him unfavorably with March who however "did flop around in the clouds." The last paragraph of this part probably includes plaintiff in the "strange company" selected by Wallace.

The second part of the article states that the Dies Committee dug up all the information about "wild people who wormed their way into the government . . . , including many of the most malignant Communists in the world, . . . ." The rest of this part has no relation to this nor, it seems, to the rest of the article. Finally the third and concluding part picks up the criticism of the Department of Commerce in the first part and broadens it to criticism of the United States post war patent policy with Germany and Russia and finally into a hope that "bureaucrats" won't give away our "atomic data."

The question is whether count two, based on the article, states a cause of action in libel. This involves the question not whether the meaning ascribed to the words by plaintiff was libelous but whether the words used were capable of conveying the meaning which plaintiff ascribes to them. The article does not directly refer to plaintiff as a Communist, etc. Plaintiff argues that the article read as a whole is capable of conveying

344

to an ordinarily reasonable reader the meaning that he is a Communist or a Communist sympathizer. We believe that no ordinarily reasonable reader could understand the language used to mean that plaintiff was a Communist, etc. Any implication of sympathy with Communists arises out of the charges against the Department of Commerce. The language clearly places plaintiff in either the Department of Agriculture or the Bureau of Economic Warfare. Plaintiff relies principally upon the language in the first paragraph of the second part of the article. It is plain that the term "malignant Communists" forms one species of the genus "wild people." We think that what was said about plaintiff in the first part of the article rather excluded him from the "malignant Communists" species and left him under the genus "wild people" in a species "strange company."

 We conclude, on this claim, that the words in the article are not capable of conveying to an ordinarily reasonable reader the meaning that plaintiff is a Communist or Communist sympathizer, etc. This conclusion is consistent with the ruling in *Spanel v. Pegler,* 160 Fed. (2d) 619. The alleged libelous words there were different from the ones in this case. Our conclusion answers plaintiff's argument that words imputing Communism to him assailed his patriotism.

 Plaintiff's other claim is that the following statements in the article are libelous *per se,* namely, that plaintiff was "a strange friend of Wallace," one who wrote books so disgusting that he was "pinched," an "author of depraved books," one of the "strange company," and one of "the wild people who wormed their way into the government . . . ." The question here is not whether the words used were capable of conveying the meaning ascribed to them by plaintiff but whether the words taken in their ordinary meaning constitute libel. *Ogren v. Rockford Star Printing Co.,*

288 Ill. 405. We cannot agree that any of this language could be understood by the ordinarily reasonable reader to charge plaintiff with distributing obscene literature so as to impute to him commission of any crime described in Chapter 38, Paragraphs 468–471, Illinois Revised Statutes [Jones Ill. Stats. Ann. 37.418 *et seq.*], or in Chapter 192, Sec. 192–9, 192–10, and 192–11 of the Chicago Municipal Code. Furthermore we think that these statements do not directly tend to harm plaintiff in his profession or employment. There are no allegations from which it can be inferred that these statements contain charges which relate to plaintiff's profession or his employment as an economist with the Railroad Retirement Board. *Harkness v. Chicago Daily News Co.,* 102 Ill. App. 162; *Gerald v. Inter Ocean Publishing Co.,* 90 Ill. App. 205; *Life Printing & Pub. Co. v. Field,* 324 Ill. App. 254. There are no allegations in the complaint from which we can infer in what way the words and statements relied on tend to expose plaintiff to public hatred, contempt, aversion, or disgrace. It is to be remembered that we must take the words in their ordinary meaning and, because they are claimed to be libelous *per se,* take them as they are in themselves without innuendo. To say of one that he is strange or wild without innuendo should not be taken in any disgraceful sense. We conclude that the use of the terms ''strange,'' ''strange company,'' and ''wild people'' as including plaintiff are not libelous *per se.*

 We think that there are no words in this article which in themselves are capable of conveying to the ordinarily reasonable reader that plaintiff was engaged in or advocated depraved private or public practices. We believe that the statements that the plaintiff wrote disgusting and depraved books is a statement of Pegler's opinion of the books. These books were matters of public concern (Restatement of

Torts, Vol. III, Page 276) and in the absence of a bad motive (solely to harm plaintiff, Restatement of Torts, Vol. III, Secs. 606, 609) the expression of the opinion was not actionable libel. *Potts v. Dies,* 132 Fed. (2d) 734; Restatement of Torts, Vol. III, Secs. 606, 609. There is nothing alleged from which we can infer that Pegler's opinion was expressed solely to harm plaintiff. Restatement of Torts, Vol. III, Sec. 609 (c). This Court recently held where these matters appear from the complaint they may be considered on a motion to dismiss. *Dilling v. Illinois Publishing Co.,* 340 Ill. App. 303. A similar question was considered on a like motion in *Potts v. Dies,* 132 Fed. (2d) 734, though it does not appear that the point was made that the question should not be considered. This disposes of the second claim.

 Finally it cannot be claimed that the complaint sufficiently charges a case of libel *per quod.* The rule is that in such a case special damages must be alleged. *Campbell v. Morris,* 224 Ill. App. 569; *McDonald v. Chicago Daily News Publishing Co.,* 252 Ill. App. 61. Plaintiff's allegations of special damages are wholly insufficient because they are too general and the motion to dismiss did not aid the allegations. *McDonald v. Chicago Daily News Publishing Co.,* 252 Ill. App. 61. Special damages must be alleged with particularity. *Life Printing & Pub. Co. v. Field,* 324 Ill. App. 254. It is not enough for plaintiff to allege generally that as the result of the article his professional standing or employment has been jeopardized or rendered insecure or that he has suffered financially through declining circulation of books and cessation of requests for new manuscripts or that he has incurred liability for legal fees and expenses. *Walker v. Tribune Co.,* 29 Fed. 827. We have in mind the rule of pleading against alleging evidentiary facts. The requirements for actionable

libel are strict in the interests of protecting freedom of expression.

For the reasons given we think that a case of actionable libel was not stated, the Court ruled properly on the motion to dismiss and the judgment is affirmed.

*Judgment affirmed.*

LEWE, P. J., and BURKE, J., concur.