**SCHY v. HEARST PUB. CO.**
No. 10793.

United States Court of Appeals
Seventh Circuit.
June 24, 1953.

John F. Sembower, Chicago, Ill., for appellant.

Kurt J. Salomon, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

FINNEGAN, Circuit Judge.

This appeal is prosecuted to reverse an order of the District Court which sustained appellee's motion to dismiss the complaint charging libel, and directing its dismissal at appellant's costs. The alleged defamatory matter was published by appellee,

Hearst Publishing Company, Inc., on February 25, 1951, in its daily newspaper, "The Chicago Herald American," which is circulated in the City of Chicago, Cook County, Illinois, and elsewhere throughout the United States. The article used the following language:

"Behncke Tells How Group Jammed
Way Into Sickroom"

By Meyer Zolotareff

"David L. Behncke, a legendary figure in America's aviation history and the man who raised the standards of living for thousands of pilots through the world, today bemoaned what he termed an insult by 17 employees of the union he heads.

"From a sickbed in his six-room bungalow at 6459 S. Albany Ave., the national president of the AFL Air Line Pilots Association and first president of the International Federation of Air Line Pilots Associations, denounced their charges of dictatorial treatment and refusal to bargain with union employes for wage increases.
"Lowest Blow"

"Behncke, a leading advocate of air safety and one of the great fighters for better working conditions, frankly admitted:

" 'I think it is the lowest blow ever struck to any representative of workers in the labor world. It really hurts. I've never been against the establishment of agreements with employes of our union.'

"Behncke was in New York directing hearings of his union before a presidential fact-finding board, involving a dispute with American Airlines about curtailment of flying hours for 800 pilots, when, he said, the charges were made in his hotel room there Feb. 15 by Maurice H. Schy, an association lawyer and head of 17 disgruntled staff employes.
"Gestapo Action"

"Branding the entrance of Schy's group into his room, where he was ill as a Gestapo Action Behncke said:

" 'At the time they made their unannounced military-manner entrance, I knew nothing about the troubles of our staff employes or that some were dissatisfied.

" 'When Schy threw a contract on the bed and asked me to sign it, I told him this was too abrupt and I was in no position to sign any contracts. He threatened to set up picket lines in front of the hotel.

" 'It is a lie that I am against establishing agreements with employes of the association. In fact, I have long encouraged an agreement for stabilizing their employment, but I will never recognize any shotgun approach.'

"Behncke said the association has 67 employes, of whom 50 do clerical and secretarial work. Their average wage, he said, is $58 a week for 37½ hours' work. The 17, who call themselves 'professional' emloyees, are semi-executives whose salary ranges from $5,700 to $8,500 a year.

"The union chief continued:

" 'Attorney Schy and the others griped about being away from home, that I made them work long hours and they demanded extra compensation in their new agreement. While pilots operate under the Railway Labor Act [45 U.S.C.A. § 151 et seq.], employes at the office are subject to the rules of the Taft-Hartley law [29 U.S.C.A. § 141 et seq.]. Under this law they must make a formal approach.'
"Defies Physicians"

"Convalescing here, Behncke said he would defy orders of his physicians and fly back to New York within a week to end hearings before the fact-finding board in an effort to aid his pilots.

"He was flown to Chicago on a stretcher after the New York hotel room incident."

The complaint of appellant, Maurice Schy, alleges that the direct statements and innuendos contained in said publication falsely charged him with wicked designs, with using Gestapo methods and actions, bad and reprehensible conduct, and that he was disloyal, dishonest, unfair, unscrupulous, and untruthful and guilty of attempting to use force to accomplish certain purposes. He charges that the statements in the publication were wholly false and that he has been injured thereby in his reputation, business, credit and profession. He seeks damages in the sum of

$100,000. The appellee, Hearst Publishing Company, Inc., moved to dismiss the complaint on the following grounds:

(1) That the innuendos are not reasonably ascribed to the alleged libelous words;

(2) That the alleged libelous words are not capable of conveying the meaning ascribed to them by the innuendos;

(3) That the complaint shows on its face that the alleged libelous article is not libelous *per se;*

(4) That the complaint shows on its face that the alleged libelous article is not libelous *per quod;*

(5) That there is no allegation of facts showing actual malice on the part of defendant toward plaintiff and that special damages are not properly alleged.

On October 2, 1952, the District Court sustained defendant's motion and ordered the complaint dismissed. Thereupon, the plaintiff moved to vacate said order of October 2, 1952, and it was vacated by the District Court which then proceeded to reconsider the motion to dismiss.

On November 20, 1952, the defendant's motion to dismiss was again allowed and the complaint was ordered dismissed. This appeal followed.

The only question presented here is whether the publication set forth in the complaint was libelous *per se*. Appellant contends that the publication defamed and libeled him in his occupation as an attorney at law. In order to determine whether or not it contains matter libelous *per se,* the entire article must be read and considered as a whole, Parmelee v. Hearst Publishing Co., Inc., 1950, 341 Ill.App. 339, 343, 93 N.E.2d 512. The words of the publication must be taken in their usual and common acceptation. As this court said in Brewer v. Hearst Publishing Co., Inc., 7 Cir., 185 F.2d 846–850:

"* * * The meaning of the words alleged to be libelous cannot, by innuendo, be extended beyond a reasonable construction. Life Printing and Publishing Co. v. Field, [1944] 324 Ill.App. 254–262, 58 N.E.2d 307. Innuendos are not available to impute libel to an article which in itself is otherwise innocent of any libelous meaning. Words alleged to be libelous will receive an innocent construction if they are reasonably susceptible of it."

Keeping the foregoing rules in mind, it appears to us that the average person reading the article complained of at bar would conclude that it details a somewhat unusual and ironical situation. The president of the Airline Pilots' Federation, while representing the Pilots' Union in a dispute with American Lines, an employer of pilots, is himself confronted with a demand for wage increases by the office employees of his own union. He finds under the circumstances, the same tension, antagonism and feeling in representing the employers' side as is usually manifested when he is acting for Air Pilots in controversies with the operators of air lines.

The statement in the publication "I think it was the lowest blow ever struck at any representative of workers in the labor world—it really hurts," when considered in connection with the entire article does not in our opinion indicate or mean that any physical assault was charged to have been committed against Behncke. It seems to be a mere expression of injured feelings. In our opinion it is not libelous *per se.*

The statement that plaintiff and his co-employees made an "unannounced military-manner entrance," "Gestapo-like" into the sick-room of the president of the union is merely a somewhat rhetorical way of saying that their conduct was dictatorial, and that they used highhanded methods. We find nothing libelous *per se* in such language. So far as the article complained of shows, there was no relationship of attorney and client involved, when plaintiff representing himself and other dissatisfied co-employees demanded a contract regarding their wages and working conditions. Nowhere in the article complained of is there any charge of treachery, disloyalty or improper conduct as an attorney. As a matter of fact, it does not appear from the article that he was the attorney either of the association of air pilots or of its president.

In our opinion, the District Court properly held that the publication complained of was not libelous *per se*. Since the complaint at bar contains no allegation showing special damages and actual malice, it does not state a cause of action for publishing words actionable *per quod*. Strauss v. Meyer, 48 Ill. 385, 388.

The judgment of the District Court is affirmed