Clyde C. CROSBY, Plaintiff-Appellant,

v.

TIME, Incorporated, a New York Corporation, Defendant-Appellee.

No. 12231.

United States Court of Appeals Seventh Circuit.

April 29, 1958.

Solomon Sachs, Chicago, Ill., Clifford D. O'Brien, Portland, Or., W. A. Frank-

lin, Anderson & Franklin, Portland, Or., for appellant.

Don H. Reuben, Howard Ellis, William R. Jentes, Chicago, Ill., Kirkland, Fleming, Green, Martin & Ellis, Chicago, Ill., of counsel, for appellee.

Before DUFFY, Chief Judge, and MAJOR and PARKINSON, Circuit Judges.

MAJOR, Circuit Judge.

■ This libel action was instituted by plaintiff Crosby, a citizen of the State of Oregon, against defendant, Time, Incorporated, a New York corporation. Jurisdiction rests upon diversity of citizenship, together with the requisite jurisdictional amount. The District Court, on defendant's motion, dismissed the complaint because of failure to state a claim upon which relief can be granted. Whether that Court was justified in so doing is the sole issue before this Court.

The complaint alleges that defendant's weekly magazine, circulated in the States of Oregon and Illinois, and in the eleven Western States of the United States, in its issue of June 4, 1956, maliciously and falsely printed an article defamatory of plaintiff; that plaintiff for a considerable period of time had been the International Representative for the State of Oregon of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO, and in such capacity represented the Teamsters and its subordinate bodies throughout the United States, particularly in Chicago and in the eleven Western States, and that plaintiff had for many years enjoyed a good reputation among members of the Teamsters, among employers with whom that organization deals and with the public generally.

The article constituting the alleged libel, entitled "Scandal in Portland," is set forth verbatim in the complaint and appears to have been previously published in the Oregonian, a Portland newspaper. It would unduly prolong this opinion and serve no useful purpose to set forth the complete article. However, the sufficiency of the complaint being in issue, it is essential to set forth that portion upon which plaintiff relies as constituting the libel which, as stated in his brief, is as follows:

" * * * top Western officials of the International Brotherhood of Teamsters were conspiring with Seattle gamblers to 1) control Portland's law enforcement agencies, 2) organize all the city's rackets, from pinball machines to prostitution. * * *

" * * * the Seattle plotters approached Racketeer Elkins to join them * * * in * * * the scheme to organize gambling and bootlegging * * * prostitution * * *.

"Fearing that they planned to freeze him out, Elkins took the precaution of 'bugging' the Portland apartment of the Seattle emissaries with a microphone hooked to a tape recorder. On the playback he heard them plotting 'to get rid of me.'

"Elkins told the Seattle boys about his tapes and threatened to use the recordings to expose the plot unless the Teamsters and their underworld allies dropped it. * * *

"In one of the tapes a Teamster intimate scoffed: 'The Oregonian or the Journal won't take the Teamsters on * *. All the Oregonian's got to do is (fool) around with the Teamsters and the first thing you know, them guys will be up there wanting 10 or 15 cents an hour and the Oregonian can't afford it.' * * *

" * * * racketeers who were plotting to 'open the town'.

"Among other accusations, the Oregonian reported that the plotters had threatened Portland Mayor Fred Peterson with political reprisals by the Teamsters if he did not get rid of his police chief.

"Mayor Peterson confirmed the charge. The Oregon Teamsters' representative, Clyde Crosby—whom

the Oregonian revealed as an ex-convict—admitted that he had tried to get the mayor to fire Police Chief Jim Purcell, but only, he said, because the chief was in cahoots with Racketeer Elkins. * * * "

The complaint alleges that the quoted language is false and was intended by defendant to refer to or include plaintiff and was understood by all persons who read the article as referring to or including plaintiff. It will be noted that plaintiff's name is found only in the last paragraph. It should also be pointed out that no importance attaches to the phrase (following plaintiff's name), "whom the Oregonian revealed as an ex-convict," because that admittedly was a true statement. Thus, the only statement directly relating to plaintiff is that he "admitted that he had tried to get the mayor to fire Police Chief Jim Purcell, but only, he said, because the chief was in cahoots with Racketeer Elkins."

Assuming, without deciding, that there are libelous statements contained in the article, it is not discernible how they are directed to or in what manner they relate to plaintiff. True, the last paragraph, in which plaintiff's name is mentioned, bears some relation to the paragraph immediately preceding, in which it was reported "that the plotters had threatened the Portland Mayor Fred Peterson with political reprisals by the Teamsters if he did not get rid of his police chief." This report, as stated in the last paragraph, was confirmed by the Mayor. No place in the article is plaintiff identified, directly or indirectly, as one of the "plotters." His admission that he tried to get the Mayor to fire the Police Chief because "the chief was in cahoots with Racketeer Elkins" immediately disassociates him from the "plotters" referred to in the preceding paragraph. More than that, the statement exonerates plaintiff from being a party to any movement or conspiracy seeking the removal of the Police Chief for any ulterior or unlawful purpose. On the contrary, the statement ascribes to plaintiff a reason for seeking such removal which was not only lawful but commendable. The same reason could properly have been given by any upright citizen.

On the face of the article under attack, it is not discernible how the ordinary reader (we have read the article many times) would have any reason to believe that plaintiff had any part in the corrupt activities attributed to others. He was referred to as an Oregon representative of the Teamsters' Union. To assert, as plaintiff does, that in that capacity he was included among "the top Western officials of the International Brotherhood of Teamsters," against whom charges were made in the first paragraph, is little more than a figment of the imagination. In addition to what we have said about the "plotters" referred to in the next to the last paragraph, it is significant to note that in the second paragraph they are characterized as "the Seattle plotters." We assume that "Seattle" refers to a city in the State of Washington. There is no reason to believe that any reader of the article would think that plaintiff was a "Seattle plotter" or associated with that particularly described group. In our judgment, a careful reading of the article is convincing that no cause of action was stated and that the District Court was justified in dismissing the complaint.

Such being our conclusion, no good purpose could be served in the citation and discussion of the many libel cases called to our attention. As might be expected on a subject charged with so much controversy, the cases from different jurisdictions are not entirely harmonious. This Court has held, however, that in an Illinois diversity case involving an alleged libel by a national magazine, Illinois law alone governs the rights of the parties. Spanel v. Pegler, 7 Cir., 160 F.2d 619, 621, 171 A.L.R. 699; Brewer v. Hearst Pub. Co., 7 Cir., 185 F.2d 846, 850; Schy v. Hearst Pub. Co., 7 Cir., 205 F.2d 750. We find no reason to retract our previous holding on this point.

The so-called innocent construction rule, that is, if language is capable

of innocent construction it should be read and declared non-libelous, is firmly established in Illinois. LaGrange Press v. Citizen Pub. Co., 252 Ill.App. 482, 485; Dilling v. Illinois Publishing and Printing Co., 340 Ill.App. 303, 306, 91 N.E.2d 635; Parmelee v. Hearst Pub. Co., Inc., 341 Ill.App. 339, 343, 93 N.E.2d 512; Epton v. Vail, 2 Ill.App.2d 287, 119 N.E. 2d 410. In the latter case, the Court in dismissing a complaint stated (opinion not published):

> "The language must receive an innocent construction when susceptible of such interpretation and cannot by innuendo be extended beyond a reasonable construction. [Citing cases.]"

This rule has been approved by this Court. Brewer v. Hearst Pub. Co., 7 Cir., 185 F.2d 846, 850; Schy v. Hearst Pub. Co., 7 Cir., 205 F.2d 750, 752. Thus, if we assume, contrary to what we think, that our appraisement of the alleged libelous language is too narrow, the application of the innocent construction rule clearly supports the conclusion that the complaint failed to state a claim upon which relief could be granted.

■ As we have heretofore pointed out, a reading of the article furnishes no reasonable basis for the thought that plaintiff, referred to as the Oregon Teamsters' representative, was one of the top Western officials of the International Brotherhood of Teamsters who were asserted to be conspiring with Seattle gamblers. Even though it be assumed, however, that he was one of such top officials, he could not prevail, under Illinois law, in the absence of a showing that all of such officials were accused of wrongdoing. Latimer v. Chicago Daily News, Inc., 330 Ill.App. 295, 298, 71 N.E.2d 553. The Latimer case was cited with approval by this Court in Brewer v. Hearst Pub. Co., 185 F.2d 846, 849.

In our judgment, the complaint was properly dismissed. The order appealed from is, therefore,

Affirmed.