STATE OF TENNESSEE

*v.*

LEONARD T. GUINN.

(*Knoxville,* September Term, (May Session) 1960.)

Opinion filed May 26, 1961.

LODGE EVANS, District Attorney General, Elizabethton, for the State.

JOHN R. JONES, WILLARD H. GARLAND and H. DENNIS ERWIN, Erwin, for defendant in error.

MR. JUSTICE BURNETT, delivered the opinion of the Court.

An "Inquisitorial Indictment" was returned against the defendant in error, charging him with criminal libel. The trial court quashed the indictment because in his opinion the published language for which it was charged the defendant in error libeled the District Attorney General was not *per se* libelous. The State has appealed and assigned errors. Briefs have been filed by both sides, and after carefully studying the matter we are now in a position to dispose of it.

The indictment charges that Guinn, the defendant in error, "intending to provoke the said Lodge Evans to wrath, or expose him to public hatred, contempt, or ridicule, or to deprive him of the benefits of public confidence and social intercourse; the defamatory and printed matter published in said newspaper on the 13th day of July, 1960 is in words as follows;

" 'Erwin-Mayor R. W. (Dick) McNabb yesterday received from atty. Gen. Lodge Evans a letter saying that Atty. Gen. Lodge Evans has investigated written complaints by citizens involving the conduct of Erwin Police Chief Leonard T. Guinn. * * * In a letter to the Press-Chronicle, dated July 6, Guinn said ''I have nothing to hide. Let them investigate me to their heart's content, but let them do so in an open and honorable fashion and according to the concepts of American justice. I resent, and the people resent, their Hitler-like tactics.''

" 'He added, ''I feel that this is purely political. I have been warned that if I oppose the Evans-Bailey clan, I will be embarrassed. I have always opposed them and always will, regardless of their tactics. * * *'' ' ''

Following this quotation of this alleged libelous language the indictment found that the investigation by the Attorney General of the defendant in error was lawful, honorable and unoppressive, etc.

The sole question involved here is whether or not this letter written to a Johnson City paper, which was published, by the defendant in error is libelous *per se*. If it isn't then the trial judge was clearly correct. If it is, the case must be remanded for trial.

The indictment is grounded on Section 39-2701, T.C.A., which reads:

"A libel is the malicious defamation of a person, made public by any printing, sign, picture, representation, or effigy, intending to provoke him to wrath, or expose him to public hatred, contempt, or ridicule,

or to deprive him of the benefits of public confidence and social intercourse; or any malicious defamation made public as aforesaid, designed to blacken and vilify the memory of one who is dead, and tending to scandalize or provoke his surviving relatives or friends.''

The following Section of the Code specifies whether or not publication is necessary and what constitutes it, etc. Then the Section immediately following makes such a libel a misdemeanor and provides further that ''the jury has a right to determine the law and the facts, under the direction of the court, as in other criminal cases.'' The statutory quotation above (39-2701, T.C.A.) is almost identical with the definition of criminal libel as is given in Wharton's Criminal Law, Vol. 2, at page 741. Immediately after giving the definition of criminal libel, Wharton says:

''The gravamen of the offense is not the injury which libel does to the reputation of the person libeled, as in the case of civil liability for defamation, but rather the danger that such defamation will incite the victim or others on his behalf to retaliate to seek revenge by conduct amounting to a breach of the peace.''

■ Mr. Wharton further on page 758 of Volume 2, makes the following applicable statement, which is true in any charge of criminal libel, especially herein, where innuendoes are necessary in establishing such a libel. He says: ''The truth of the innuendoes is for the jury.''

Ordinarily in criminal libel, and this was certainly true under the common law, the truth of the libel was no defense, because the gravamen of the offense was not

the truth or falsity of the statement but its tendency to cause a breach of the peace. See Section 878, Vol. 2, Wharton's Criminal Law.

■ In considering whether or not the language used herein is libelous *per se,* it is necessary for us to apply the same rules that are applied in civil cases by reading the whole of the language and taking the words in their general and ordinary meaning. The publication is considered as a whole and we must construe the words as they would naturally be understood by persons who read or hear them, unless it clearly appears that they were used in an entirely different sense or another sense.

■ We come now as to what is the test of criminality in a libel indictment or presentment. "The test", says Newell, "seems to be that, in all cases where a party, in order to maintain a civil action, must show special damages in order to recover, no indictment can be sustained, because, as it is said in such cases, a suit for damages offers an adequate remedy." Newell, Slander and Libel, 4th Ed., Section 807, page 916. In other words the language used must be libelous *per se,* as is used in our civil cases with the qualifications hereinabove stated as to criminal libel. The landmark case, of course, in this State on civil libel is *Fry v. McCord,* 95 Tenn. 678, 33 S.W. 568.

■ In reading the texts and various authorities on criminal libel we find that where the libelous language is such that the administration of public justice is questioned in such a way as to injure or hurt the administration of it, that the language thus used is a criminal libel. When the language tends in any way to injure the administration of government or public justice the courts

as a rule have considered it libelous because public confidence in the courts is a matter of paramount necessity to the government. Any attack upon the courts or its judges or those having a part in the machinery of the administration of justice is dangerous and some authorities have said that it is almost as dangerous as an attack upon the government when it does attack the administration of justice or the officers administering it for the same reason that renders a seditious libel indictable.

■ Here in the instant case we have a charge made not in the heat of argument in a trial but by letter sent to a newspaper and published in the newspaper charging that the District Attorney General is conducting his investigations under "Hitler-like tactics". All of us, who were living and have been able to read and understand the communicative word since the advent of Hitler and World War II, and especially now at the present time under the trial that is being conducted of one of Hitler's Lieutenants, understand what the term "Hitler-like tactics" implies. This term when applied to an ordinary citizen or to a lawyer, as it was in *Schy v. Hearst Pub. Co.*, 7 Cir., 205 F.2d 750, might not be libelous, but when the term is applied to a District Attorney General in the conduct of his office it implies far more, because the application of the term is not to the individual as an individual but to his acts in the way in which he is conducting his office. When we apply this term to a District Attorney General, who is a quasi-judicial officer representing the State, and who is presumed to act impartially and in the interest of justice, it clearly infers that this officer in his acts is guilty of official oppression. In Black's Law Dictionary the word "oppression", as thus above used, is defined as follows:

"The misdemeanor committed by a public officer, who under color of his office, wrongfully inflicts upon any person any bodily harm, imprisonment, or other injury. * * * An act of cruelty, severity, unlawful exaction, or excessive use of authority." (Authorities for this statement by Mr. Black are given in the text.)

Thus we have concluded that by the use of this language against this officer that the language is libelous *per se* and therefore that the trial judge was in error in quashing the indictment. The result is that the case is reversed and remanded to the trial court for further action consistent with this opinion.