Budd LEPMAN, Plaintiff-Appellant,

v.

Marjorie EVERETT and Time, Incorporated, a corporation, Defendants-Appellees.

No. 14414.

United States Court of Appeals
Seventh Circuit.

June 18, 1964.

Rehearing Denied July 15, 1964.

Irving Goodman, Chicago, Ill., for appellant.

Don H. Reuben, Lawrence Gunnels, William J. Lynch, Howard Ellis, Chicago, Ill., for defendant-appellee, Time, Incorporated.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and SWYGERT, Circuit Judges.

HASTINGS, Chief Judge.

Plaintiff Budd Lepman brought this diversity action in the district court against defendants Marjorie Everett and Time, Incorporated. He sought recovery of $300,000 actual damages and $300,000 punitive damages for an alleged libel against him by defendants.

The trial court granted defendants' motions to strike the complaint and dismiss the action and denied plaintiff's subsequent motion to vacate and set aside its order of dismissal. Plaintiff appeals from orders of the trial court dismissing the action and refusing to vacate and set aside the dismissal.

Defendant Time, Incorporated owns and publishes a magazine of national circulation known as Sports Illustrated.

Defendant Marjorie Everett is alleged to be the chief stockholder and owner of a controlling interest in Chicago Thoroughbred Enterprizes, Inc., a corporation, which owns three race tracks in the Chicago, Illinois area, viz.: Arlington Park, Washington Park and Balmoral. She was said to wield great influence in racing circles in the United States and to have been the subject of frequent articles in newspapers and periodicals as an important influence in the sport of racing.

In the August 20, 1962 issue of Sports Illustrated there appeared an article entitled "The Racing Lady of Chicago." This was a comprehensive report on Mrs. Everett's life and activities as the "boss" of three major Chicago race tracks. She was characterized as an aggressive and imaginative person who had become a controversial figure in the racing field.

The subtitle of the article reads: "Her pace is furious and her manner brusque, but Marjorie Lindheimer Everett is bringing new vitality to her sport in the Midwest. She has spent millions to see that her patrons get the best, and now she offers the richest race of them all." Whitney Tower is the author of the article.

The complaint quotes the following paragraph from such article:

"'The TRPB [Thoroughbred Racing Protective Bureau] says they keep gangster elements out of tracks,' says Mrs. Everett. 'Well, they don't.' She tells of once pointing out a big Chicago bookmaker to TRPB men who had overlooked him in her own Post and Paddock Club. She now has her own track police. This costs her $100,000 a year more than it used to, but it is claimed to be more effective. 'It better be!' says Mrs. Everett. *'We've thrown out dozens of undesirables,'* she adds, *'including a bookmaking relative of mine who is racing right now in New Jersey.'*" (Emphasis added.)

Plaintiff rests his entire case on the single sentence, emphasized in the foregoing quotation, viz.: "'We've thrown out dozens of undesirables,' she adds, 'including a bookmaking relative of mine who is racing right now in New Jersey.'"

Plaintiff claims this statement is false and was known to be so when Mrs. Everett made it to the reporter for Sports Illustrated. He charges she made it "wilfully and maliciously with the intent to damage and injure the person referred to, namely the plaintiff in this cause." He asserts he is thereby falsely charged with being a bookmaker.

Plaintiff Budd Lepman is nowhere identified by name or picture within the entire article. He points to the foregoing excerpt as the sole reference to him therein.

Plaintiff seeks to establish his identity with the foregoing statement through allegations in his complaint totally extrinsic to the article, that (1) his name is Budd Lepman; (2) he is Mrs. Everett's first cousin; (3) his occupation is training horses; (4) he was in New Jersey when the article appeared; (5) he was training horses in New Jersey at that time; and (6) he was the only relative of Mrs. Everett then "engaged in racing" in New Jersey.

The motions to dismiss were grounded on failure of the complaint to state a claim. They charged that the language complained of is not libelous *per se*, is not libelous *per quod*, is not of and concerning the plaintiff, is not defamatory in any sense whatsoever and that the complaint fails to plead special damages.

The primary issue before us is whether the assailed language in Sports Illustrated raises a submissible jury question as to whether it was "of and concerning" the plaintiff.

It is agreed by the parties that Illinois law governs here.[1] The result to be reached is controlled by the recent decision of the Supreme Court of Illinois filed January 23, 1962, reported as John v. Tribune Company, 24 Ill.2d 437, 181 N.E.2d 105.

In John, Chicago police raided a brothel in an apartment above the one in which plaintiff resided at the same address. Plaintiff's landlady and several other women were arrested and charged with immoral activities. Plaintiff was in no manner involved in the raid. In two news stories, The Tribune reported that a woman known by several aliases, including plaintiff's name, had been ar-

1. See Wheeler v. Dell Publishing Co., 7 Cir., 300 F.2d 372, 375 (1962); Crosby v. Time, Incorporated, 7 Cir., 254 F.2d 927, 929 (1958).

rested in the raid by the vice squad in an apartment at plaintiff's address. Plaintiff's landlady was the only person identified in the articles. Her name was given as Dorothy Clark, alias Dolores Reising, Eve Spiro and Eve John. She was reported to be the friend of a gangster. Plaintiff's maiden name had been Eve Spiro and her name at the time was Eve John. She was the only person with such name at that address.

The court held that "whether an article is susceptible of the construction for which a plaintiff claims is a question of law for the court, to be resolved by reading the offending language stripped of innuendo. * * * [Citing cases]." 24 Ill.2d at 440–441, 181 N.E.2d at 107.

The court further held that the articles were capable of being read as "of and concerning" a woman other than plaintiff, and necessarily must be so read. 24 Ill.2d at 441, 181 N.E.2d at 107.

It was held in John, applying the "innocent construction rule" to the subject language, that the publications were not libelous of plaintiff as a matter of law. "That rule holds that the article is to be read as a whole and the words given their natural and obvious meaning, and requires that words allegedly libelous that are capable of being read innocently must be so read and declared nonactionable as a matter of law. * * * [Citing cases]."[2] 24 Ill.2d at 442, 181 N.E. 2d at 108.

In Crosby v. Time, Incorporated, 7 Cir., 254 F.2d 927 (1958), relying upon Illinois law, we followed the general principles reestablished and made final in John. We noted with approval the statement of the Illinois innocent construction rule: "The language must receive an innocent construction when susceptible of such interpretation and cannot by innuendo be extended beyond a reasonable construction." 254 F.2d at 930. See Porcella v. Time, Inc., 7 Cir., 300 F.2d 162, 167

(1962) and Brewer v. Hearst Pub. Co., 7 Cir., 185 F.2d 846, 850 (1951).

Plaintiff seeks to distinguish John, Crosby and other cases cited by defendants. We reject any such distinction. If there be any question as to the continuing vitality of these applicable general principles in Illinois, reference is made to the action of the Appellate Court of Illinois on May 6, 1964, in No. 49358, 199 N.E.2d 73, when it overruled its prior decision in Proesel v. Myers Publishing Company, 24 Ill.App.2d 501, 165 N.E.2d 352 (1960), one of the cases relied upon by plaintiff in this appeal.

In the instant case, we find the article containing the assailed language is concerned solely with the racing background and activities of defendant Marjorie Everett. The allegedly libelous statement attributed to her was a passing comment concerning her activities in keeping bookmakers out of her race tracks in Chicago. Nowhere in the article is there any identification of plaintiff.

As we said in Crosby, 254 F.2d at 929: "On the face of the article under attack, it is not discernible how the ordinary reader (we have read the article many times) would have any reason to believe that plaintiff had any part in the corrupt activities attributed to others."

■ Applying the principles in John and Crosby, reaffirmed by us in Porcella, we hold the district court correctly ruled the charged defamatory statement not to be libelous. The district court did not err in striking the complaint as stating no cause of action.

Such being our conclusion, we deem it unnecessary to comment on the numerous libel cases called to our attention. Further, we do not reach the question whether the complaint fails to properly plead special damages.

■ We have considered plaintiff's procedural objections relating to the de-

---

2. The court cites numerous Illinois cases and includes Crosby v. Time, Incorporated, 7 Cir., 254 F.2d 927 (1958) and

Schy v. Hearst Pub. Co., 7 Cir., 205 F.2d 750 (1953).

cision of the case by the trial court before *defendants'* reply brief was filed and without hearing oral argument. We find them to be without merit. Further, plaintiff was not harmed by any denial of opportunity to amend his complaint. He made no timely request to do so and has never indicated the nature of any amendments he proposes to make.

The judgment of the district court appealed from is affirmed.

Affirmed.