78 So.2d 732 (1955)
Paul RIMMEIR and Germaine Rimmeir, Copartners doing business as Sea View Ventilated Awning Shutters, Appellants,
v.
Jack DICKSON and Benjamin Horrow, as Copartners doing business as Miami Ventilated Awning Shutter Company, Appellees.
Supreme Court of Florida. En Banc.
February 18, 1955.
Rehearing Denied April 12, 1955.
Seymour Simon and Ward & Ward, Miami, for appellants.
Robert H. Givens, Jr., Miami, for appellees.
ROBERTS, Justice.
The plaintiffs, Dickson and Horrow, doing business as Miami Ventilated Awning Shutter Company, filed suit in the court below for an injunction and damages against the defendant Rimmeir, doing business as Sea View Ventilated Awning Shutters, because of the defendant's alleged infringement of plaintiffs' trade name and unfair competition. The lower court found in plaintiffs' favor and entered a decree enjoining the defendants from
"(a) using the word `ventilated', or any word similar thereto or having the same root, in their trade name or in their trademark;

*733 "(b) using the expressions `ventilated awning' and `ventilated awning shutter' or the word `ventilated' to describe or to identify any awning or awning shutter manufactured or sold by said defendants;
"(c) using in their displays, newspaper advertisements, television advertisements, pamphlets or other advertising media, any picture or sketch of an awning or any expression which conveys the impression that the awning manufactured by the defendants is the same awning as the `ventilated awning' manufactured by the plaintiff; and
"(d) from employing or using in any manner, directly or indirectly, any telephones, telephone service or telephone numbers listed now or hereafter in any telephone book or with any telephone company in any name containing the words `ventilated awning' or `ventilated'."
The court also found that the defendants had, between February 1951 and August 1953, realized a net profit of more than $120,000 on sales of awnings, and required them to offer additional evidence before the Special Master as to "what part of the profits * * * if any, was not attributable to their infringement of plaintiffs' tradename and trademark." (Emphasis supplied.)
On this appeal, the defendants challenge the propriety of both the injunctive and the damage features of the final decree.
As to the injunction, the plaintiffs contend here that the decree of the lower court in this respect should be sustained under the authority of Florida Ventilated Awning Co. v. Dickson, Fla. 1953, 67 So.2d 215, 217. There are unquestionably many points of similarity between that case and the instant case. The plaintiffs are the same in both cases, and the defendants in each were former employees of the plaintiffs or their predecessors in title. The relief sought was the same. We decided in that case that the descriptive term "Ventilated Awning" or "Ventilated Awning Shutter" was capable of acquiring and had acquired a secondary meaning by reason of its use by plaintiffs, and that such descriptive term could be protected from infringement by others in a trade name and, also, in advertising and marketing a similar product. It appears that the defendants in that case manufactured and sold an awning which was almost identical with that of the plaintiffs, and that they not only adopted the words "Ventilated Awning" in their trade name, but had also "conducted a general advertising compaign to sell them, in which they employed the identical features, formats, ribbons, checklists, phrases and expressions which complainants had used for years in advertising and marketing their awnings."
The facts developed in this case are different. The defendants' awning shutter is made of aluminum [the plaintiffs' is of redwood] and is ventilated only at the sides, rather than on the top as in plaintiffs' product. It had been sold in the local trade area by the defendants' predecessor in title, All Florida Aluminum Awning Company, Inc., since 1946 under the trade name "Air-O-Blind," and this company's advertising folder had, since that date, used the words "Funnel Type Ventilation * * * for refreshing coolness! Life-Time Awnings are scientifically vented for maximum air movement." The Special Master stated in his report that "In the awning-shutter business many manufacturers selling in this trade territory have from time to time claimed with truth that their products afforded ventilation, and it is true that other manufacturers adopted such trade names as `Kool Vent', `Duo Vent', `Ventaire', and `Ventilite'. However, these are fanciful derivations from the root word `vent' and their employment in the opinion of the Master, was not such pre-emption or contemporaneous use as to defeat plaintiffs' claims to protection against defendants. He found that a similar name was adopted intentionally by the defendants to take advantage of the good will built up by the plaintiffs, their former employer, and that, even if it was unintentional, the similarity between the company names of the plaintiffs and defendants had caused confusion among their customers. Under all the circumstances here, and the rule of stare decisis, we cannot hold the lower court in error for enjoining the defendants from using the word "ventilated" in its trade *734 name, "Sea View Ventilated Awning Shutters," under the authority of the Florida Ventilated Awning Co. case, supra. However, in the face of the finding in this case as to the existence of other trade names based on the root word "vent", we find no justification for enjoining the defendants from adopting a new trade name based on such root word, and that particular portion of paragraph (a), supra, is reversed.
We also affirm paragraph (c) of the final decree, quoted supra, for reasons which are so obvious that they need not be stated.
We cannot, however, find any justification in the record for the injunctive provisions of paragraphs (b) and (d) of the decree, also quoted supra. Paragraph (b) was apparently based on our opinion in Florida Ventilated Awning Co. v. Dickson, supra, 67 So.2d 215, 217, and the ruling there made as to advertising which "conveys the impression that the awnings made and sold by defendants are ventilated awnings" was perhaps justified in the light of all the circumstances and the limitations of the record made before the lower court and brought here in that case. But the record here shows that there are many other awnings on the market in the local trade area which are advertised as affording ventilation, although the ventilation feature is not stressed as much as in the case of the plaintiffs' and the defendants' awnings. Many patents for "ventilated awnings" have been granted by the Patent Office, some of them more than 50 years ago. On the basis of the facts before him, the Special Master recommended only that a decree be entered "commanding the defendants to eliminate the word `ventilated' from their trade name and enjoining the defendants hereafter from describing their business or their product in any advertising matter, * * * wherein the words `ventilated' or `ventilation' are used in any manner which reasonably could be calculated to indicate that their business or their product is in anywise connected with or has any relation to the business or product of the plaintiffs." (Emphasis added). We think he was right, and have so held by affirming paragraph (c) of the decree, supra; but we think the lower court erred in going further and enjoining the defendants in the manner provided by paragraph (b), supra.
What we have said above applies equally to the use of the words "ventilated awning" or "ventilated" by the defendants in telephone listings, as enjoined by paragraph (d) of the decree, supra.
For the reasons stated, paragraphs (b), (d), and that portion of paragraph (a) which enjoins defendants from using any word similar to the word "ventilated" or having the same root, in their trade name or in their trade-mark, must be reversed.
The only other question is whether the lower court erred in requiring the defendants to offer evidence "as to what part of the profits * * * if any, was not attributable to their infringement of plaintiffs' trade name and trade-mark." As we understand this requirement of the lower court, it placed on the defendants the burden of proving the plaintiffs' damages. This was error.
It is true, as contended by plaintiffs, that in a suit under the federal Trade-Mark Act, Title 15 U.S.C.A. § 1117, for infringement of a trade-mark, the plaintiff is required to prove defendant's sales only, and the burden is on the defendant to prove all elements of cost or deduction claimed. Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co., 316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381. But this shifting of the burden of proof appears to be based on the express provisions of the federal Act; and an examination of the original file in the Florida Ventilated Awning Co. case, supra, shows that this same contention was made in that case on rehearing and was disallowed by this court. While it may be that, upon a proper showing, a case may be maintained for infringement of an unregistered trade-mark, we have the view that no such showing has been made in this case. Therefore, we are here concerned only with infringement upon plaintiffs' trade name. If the similarity of the company names diverted trade from plaintiffs to defendants, and this was intentionally done, a court of equity will afford injunctive relief, McGhan v. McGhan, 115 Fla. 414, 155 So. 653, 654; Sentco, Inc. v. McCulloh, Fla. 1953, 68 So.2d 577. But the difficulty in assessing damages in such case is immediately apparent. In fact, in the Florida Ventilated *735 Awning Co. case, the lower court found, as a matter of fact, that
"Between January 1952 and July 3, 1952 the defendants had sold approximately $90,000.00 worth of awnings and approximately 1040 awnings. During the same period plaintiffs sold approximately $300,000.00 worth of awnings. Most of the awnings sold by defendants during that period of time would have been sold by plaintiffs if defendants had not engaged in the deceptive practices aforesaid. If plaintiffs had sold the awnings which defendants sold during said period, the net earnings of plaintiffs would have been more than $15,000.00 greater than they were."
The lower court also found that
"By reason of said conduct on the part of the defendants, plaintiffs have suffered damages by the diversion of business away from them, but there was no definite showing of specific damages which could support or prompt a granting or award of damages in dollars and cents."
On appeal here, this court held that the lower court did not err in refusing to grant damages, for the reason that "Any sum we awarded would be pure speculation. There must be something to authorize or justify a definite amount in damages before it can be awarded. The chancellor so found and we think he was correct." See also Sentco, Inc., v. McCulloh, Fla. 1953, 68 So.2d 577.
For the reasons stated, the decree appealed from must also be reversed insofar as it required the defendants to offer evidence as to the portion of their profits which were not attributable to the infringement of plaintiffs' trade name, without prejudice to the right of plaintiffs to make a "definite showing of specific damages", if they can, resulting from the infringement of plaintiffs' trade name by defendants.
Affirmed in part and reversed in part.
MATHEWS, C.J., and TERRELL and SEBRING, JJ., concur.
BARNS, J., dissents.
BARNS, Justice (dissenting).
Since one or more dissents appear imminent an opinion seems advisable.[1] The appellants-defendants have appealed from an adverse final decree predicated upon a master's findings of fact, as authorized. Appellants filed some exceptions to the master's report of a very general nature which were overruled. The chancellor's findings of fact adhered to the master's findings of fact. On this appeal no assignment of error is directed to the overruling of any exception to the master's findings nor is any assignment of error directed to any finding of fact by the chancellor. The chancellor has not departed from Harmon v. Harmon, Fla., 40 So.2d 209 and nothing has been shown why this court should. It is neither argued nor shown that findings of fact by either the master or the chancellor are "clearly erroneous". Therefore, they will be accepted and this leaves for our consideration only questions of law. We find no errors in this respect and affirm.

(Chancellor's Findings)
Except for paragraph (f) the findings of fact by the chancellor were as follows:
"(a) Plaintiffs, Jack Dickson and Benjamin Horrow, as copartners doing business *736 as Miami Ventilated Awning Shutter Company, and their predecessors have been engaged in the business of manufacturing and selling ventilated awnings and ventilated awning shutters in the counties of Dade, Broward, Palm Beach, Martin, St. Lucie, Indian River, Okeechobee, Glades, Hendry, Collier and Monroe, in the State of Florida, since 1945. During that time they have used the expression `ventilated awning' as a part of their tradename and as a trademark to describe and to identify their products.
"(b) Said expression `ventilated awning' has acquired the secondary meaning in the minds of the public that a ventilated awning or a ventilated awning shutter is a product which is manufactured exclusively by the plaintiffs and which has a certain distinctive patented ventilation feature.
"(c) The defendants, Paul Rimmeir, and Germaine Rimmeir, as copartners doing business as Sea View Ventilated Awning Shutters, embarked upon the business of manufacturing and selling awnings and awning shutters in plaintiffs' trade territory in February 1951. Since that time they have used the expression `ventilated awning' as a part of their tradename and as a trademark to describe and to identify their products for the purpose of capitalizing on the good will of the plaintiffs.
"(d) The use of the expression `ventilated awning' in defendants' tradename and as their trademark had caused confusion in the minds of the public and great damage to the plaintiffs and constitutes unfair competition.
"(e) Between February 1951 and August 31, 1953, while using said expression as a part of their tradename and trademark, the defendants sold in plaintiffs' trade territory $1,104,793.61 worth of awnings and realized a net profit of $120,491.41 on those sales."

Conclusions on the Assignment of Errors
The appellants defendants have assigned as grounds for reversal nine assignments of error. The first assignment is that the court erred in "denying motion of defendants to set aside the master's report". This assignment has not been argued and is therefore treated as abandoned. The second assignment is that the court erred "in that it failed to sustain and/or overrule the exceptions to the master's report". The decree of the court was "2. That defendant's exceptions to the special master's report be overruled". (836) Since the court did not fail to rule on the exception therefore the assignment fails.
The third and ninth assignments of error are that the court erred in the final decree in that it failed to "dismiss the bill of complaint * * *". We find that the bill is not wholly without equity and that some of the equities shown by the complaint are sustained by the proof. These assignments also fail.
The fourth and fifth assignments are that the court erred by its final decree (4th) "in that it held that the plaintiffs had any special property right to the exclusive use of the word `ventilated' in conjunction with awnings" and (5th) "overlooked the fact that the defendants purchased a going concern on competitive business to that of the plaintiffs which was in existence prior to the plaintiff's business, using trademarks and descriptive matter, including `ventilate' prior to the time the plaintiffs used said terms, and that the plaintiffs could have no rights as against these defendants".
As the fourth assignment, we have previously held that: "The fact that `Ventilated' and `Awning' were words in common use is not material. The environment in which they were placed and made to symbolize the plaintiff's article is what gave them a peculiar value to the plaintiffs and warranted the injunction order", Florida Ventilated Awning Co. v. Dickson, Fla., 67 So.2d 215, 217, and that "when one has employed an emblem or a legend so as to make it a symbol for a public desire and by acts of courtesy fortifies it with good will, it becomes an elemental part of his business that the law will protect. Many of the great businesses of the country have been built on slogans and symbols that *737 point to superior goods or to superior performance. The volume of good will accumulated with such businesses is one of their most valuable assets. The word `quality' as applied to appellant's courts was such an asset." Quality Courts United v. Jones, Fla., 59 So.2d 20, 23.
The same principle was stated by the Court of Appeals (5th) as follows: "But more significant and important * * * is the purpose evidenced by the choice, by this newcomer into the field of automobile financing, of name and advertising matter. This purpose is to project itself into that business arena panoplied in a name already favorably known, rather than to come into it on its own merits, and slowly building, here a little, there a little, establish its own place. * * * Where as here it plainly appears that there is a purpose to reap where one has not sown, together where one has not planted, to build upon the work and reputation of another, the use of the advertising or trade name or distinguishing mark of another, is in its nature, fraudulent and will be enjoined." Aetna Casualty and Surety Co. v. Aetna Auto Finance, Inc., 123 F.2d 582, 584. The fourth assignment fails.
As to the fifth assignment that the defendants purchased a going business and had used the word "ventilate" in their descriptive matter it appears that such business had not been conducted in such a manner and under such circumstances as would defeat plaintiffs' claims under the facts established by the master's findings. The assignment fails.
The sixth assignment is that the court erred in its final decree "in that it held that the mere fact that the defendant's use of the word `Sea View Ventilated Awning' as against the plaintiff's name `Miami Ventilating Awning' would prima facie make the defendants liable for damages to the extent of all profits which the defendant company had made in its three years of operation". The findings of the chancellor were not as stated in the assignment. The finding of the chancellor, adhering to the master's report, was that "the defendants have not shown that any of said sales were not attributable to said infringement of plaintiff's tradename and trademark".
The court recited that "plaintiffs were entitled to recover from the defendants all profits realized by them from the sale of awnings made under the infringing tradename and trademark", and "in accordance with the Master's recommendations, they will be permitted to reopen this case for the sole purpose of presenting evidence as to what part of the profits from said sales, if any, was not attributable to said infringement" and made a findng that: "f. The defendants have not shown that any of said sales were not attributable to said infringement of plaintiffs' tradename and trademark. In accordance with the Master's recommendations, they will be permitted to reopen this case for the sole purpose of presenting evidence as to what part of the profits from said sales, if any, was not attributable to said infringement".
Unquestionably the court having taken jurisdiction will do complete justice between the parties concerning the subject matter of the controversy. It would seem to naturally follow that the trial court, limited by equitable principles, may award such damages as the appellees have suffered which were occasioned by the appellant. The profits made by the appellant by the wrongful use of appellees' tradename and trademark are evidentiary only, but are not per se evidence of damages. See El Modelo Cigar Manufacturing Co. v. Gato, 25 Fla. 886, 7 So. 23, 24, 6 L.R.A. 823. The master and the chancellor in anticipation of further proceedings in respect to damages have sought to fix the formula for the determination of damages and the contingencies when a prima facie case is or may be established. These attempts seem to have been prompted by Misshawaka Mfg. Co. v. Kresge Co., 316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381. The Kresge case involved liability as for violation of Section 19 and the federal Trade-Mark Act of 1905, which law requires an infringer to establish his cost after plaintiff has established sales, without which the sales are to be taken as all profits and the measure of damages, absent *738 other factors. This question is one of procedure and is still moot and is subject to review after it becomes a substantial controversy. Everything a trial judge says is not subject to review. Only what he does is and not all judicial utterances are judicial acts. The affirmance of the decree on this point is without prejudice.
The seventh assignment is that the court erred in the final decree "in that it overlooked the fact that the Master in the proceedings and in his report held that the defendants had the prior right or equal right to use the advertising features, including the word `ventilate' in description of their article * * * and yet the court in its final decree perverted the Master's findings and recommendations and granted to the plaintiffs full and complete relief to which they were not entitled." Since the master's findings were not as recited and since the chancellor did not fail to follow the findings of fact by the master this assignment of error likewise fails.
The eighth assignment designates with becoming particularity as error "paragraph 3(b) on page 3 of the decree" yet appellants do not quote it in the brief or elsewhere but search reveals it in Volume VI of the record-on-appeal at page 836 as follows:
"That the defendants, their agents, employees and attorneys, be and they are hereby permanently enjoined from doing any of the following things in the counties of Dade, Broward, Palm Beach, Martin, St. Lucie, Indian River, Okeechobee, Glades, Hendry, Collier and Monroe, in the State of Florida: * * *
"(b) using the expressions `ventilated awning' and `ventilated awning shutter' or the word `ventilated' to describe or to identify any awning or awning shutter manufactured or sold by said defendants".
(Paragraph 3 of the final decree also contains subparagraphs (a), (c) and (d) but no assignments of errors are directed to these.)
The above quoted paragraph (b) of the decree in this case is the same language as contained in the final decree in Florida Ventilated Awning Company v. Dickson, Fla., 67 So.2d 217, 218. The defendants in that case were former employees who were guilty of poaching on the rights of appellees, as are the defendants-appellants in this case. This suit and that suit were pending contemporaneously until that suit was decided in 1953. The means of poaching by the defendants have much in common, but whether the means be the same or different is of no consequence. The court in that case, 67 So.2d 217, composed of the same members of the court as is this division, with one exception held: "We think this state of facts warranted the chancellor's conclusion. The phrase `Ventilated Awning' had been displayed and employed by appellees in dispensing their awnings to such an extent that it was symbolic of the article they were offering the public. When a product has become known by a distinctive emblem, sign or name and the producer has by his labor and expenditure of large funds, created such a characterization to identify it, he is entitled to have it protected. Quality Courts United v. Jones, Fla., 59 So.2d 20; Children's Bootery v. Sutker, 91 Fla. 60, 107 So. 345, 44 A.L.R. 698; Economy Auto Stores, Inc., v. Economy Auto Supply Stores, Inc., D.C., 90 F. Supp. 616." This assignment is not well founded and fails.
NOTES
[1] In effect, this case has been orally heard en banc, by a quorum of four justices. See section 4(a), Article V Constitution F.S.A., and Singer v. Ben How Realty Co., 160 Fla. 57, 34 So.2d 553. Consideration by other justices who have not heard oral argument is not required if a majority of the quorum concur in a decision unless the court should require justices not hearing oral argument to participate. See Barns, Florida's Final Appellate Jurisdiction, Florida Bar Journal, July, 1954.