89 So.2d 334 (1956)
Joe ABRAM, doing business as Florida Political Survey and Poll, Appellant,
v.
Brailey ODHAM, and The Florida Publishing Company, a Florida corporation, Appellees.
Supreme Court of Florida. En Banc.
July 11, 1956.
Rehearing Denied September 24, 1956.
*335 Willard B. Dawson, III and Gerald R. Hart, Jacksonville, for appellant.
Boyd & Jenerette, Jacksonville, for Brailey Odham.
Harold B. Wahl and Loftin & Wahl, Jacksonville, for Florida Pub. Co.
ROBERTS, Justice.
This is an appeal by plaintiff from a judgment dismissing his complaint for libel and slander filed against the defendants. The points for determination here are whether in the circumstances disclosed by the complaint the defendants, or either of them, were qualifiedly privileged to make the defamatory remarks in question; and, if so, whether such circumstances were sufficient to negative the existence of express malice on the part of the defendants, or either of them, charged against them in the complaint.
The circumstances under which the defamatory remarks were made were well summarized by the trial judge in his opinion and order granting the defendants' motion to dismiss, as follows:
"* * * the Amended Complaint herein alleges, in substance, that during a very heated and controversial political campaign for Governor of the State of Florida, the plaintiff was the author of and published The Florida Political Survey and Poll, which said publication carried prognostications and comments of plaintiff as to the comparative strength of the various candidates for public office; that plaintiff commented very unfavorably as to the Defendant Brailey Odham's possibilities to be elected Governor of the State of Florida, stating that Odham was second to Johns and `appearing to be slipping badly'; that the defendant, Brailey Odham, very strongly replied to said publications in defense of his popularity with the general public and his possibilities in the particular election; and that the defendant The Florida Publishing Company, in the ordinary course of reporting on the activities of the political campaign then in progress quoted defendant Brailey Odham's reply and comment that said plaintiff `Joe Abram is a phony and his poll is a phony,' * * *."
We agree with the trial judge that in these circumstances the remarks of the defendant Odham, even though defamatory, were qualifiedly privileged, for which *336 there is no liability in the absence of express malice. The plaintiff injected himself into the 1954 gubernatorial campaign and made derogatory remarks respecting the defendant Odham's candidacy. The defendant Odham had an interest in defending and a right to defend his candidacy, and his remarks in rebuttal to those of the plaintiff were directed to persons having a corresponding interest, right, or duty, and were made upon an occasion to properly serve such right, interest or duty, within the rule stated in Abraham v. Baldwin, 52 Fla. 151, 42 So. 591, 10 L.R.A.,N.S. 1051, as to qualifiedly privileged communications. The defendant publishing company gave a fair and accurate account of the remarks made by the defendant Odham at a political rally, in accordance with its qualified privilege to publish matters of great public interest, Crowell-Collier Pub. Co. v. Caldwell, 5 Cir., 170 F.2d 941. There was no error, therefore, in the ruling of the trial judge that the defamatory remarks complained of were qualifiedly privileged.
The rule relative to qualified privilege is, however, subject to the limitation that the parties must act without malice. "When a matter which otherwise would be a qualifiedly privileged communication is published falsely, fraudulently and with express malice and intent to injure the persons against whom it is directed, the communication loses its qualifiedly privileged character and the parties lay themselves liable to a suit for damages in an action of libel or slander." Loeb v. Geronemus, Fla. 1953, 66 So.2d 241, 244. The plaintiff's complaint contained the usual allegations of falsity and malice on the part of the defendants. So the question then becomes: Do the circumstances disclosed by the complaint negative the allegations of express malice made by the complaint?
It should first be noted that in cases of qualified privilege, "the presumption which attends cases not so privileged of malice from the publication of libelous language does not prevail. The burden of proof is changed, and, in order for the plaintiff to recover he is called upon affirmatively and expressly to show malice in the publisher." Coogler v. Rhodes, 38 Fla. 240, 21 So. 109, 112. If the uncontroverted facts are equally consistent with either the existence or nonexistence of malice, there can be no recovery, for "there is nothing to rebut the presumption which has arisen in favor of the defendant from the privileged publication." Myers v. Hodges, 53 Fla. 197, 44 So. 357, 365. Evidence of malice may be either intrinsic, that is, inferable from the very nature of the defamatory language itself, or extrinsic. Myers v. Hodges, supra, 44 So. 357. But while malice may be inferred from the nature of the communication itself, it cannot be inferred from the mere fact that the statements are untrue. Coogler v. Rhodes, supra, 21 So. 109.
We think there can be no question but that the uncontroverted facts disclosed by the complaint negative any possibility of malice on the part of the defendant publishing company. As shown therein, this defendant published a news story concerning a political rally held by the defendant Odham in furtherance of his candidacy, which quoted Odham as saying that "The gamblers are making big talk and the phoney pollsters are bluffing, but you, the people, have the final say in this tremendously important decision of nominating your governor," and which stated that "Odham cited Joe Abram [the plaintiff] of Jacksonville, `As one of the phoney pollsters.'" This is not such violent and abusive language as to require an inference of malice from the mere publication of the candidate's remarks. In fact, the defendant publishing company has argued, with some logic, that all political polls and election predictions are, in a sense, "phoney" and pure guesswork, since the voter himself does not always know in advance how he will vote once he has the secrecy and privacy of the voting booth, and that there is inherent in all polls, of whatever *337 type, the possibility of inaccuracy because the sampling may chance to be nonrepresentative. It clearly appears, then, that malice is not required to be inferred from the nature of the remarks published by the defendant publishing company.
Nor do we think there can be any substantial question as to malice arising from the circumstances in which the remarks were published. The news story was a routine report of what went on at a political rally in the midst of a heated gubernatorial campaign in which there was wide public interest, and apparently quoted only the milder portions of the defendant Odham's remarks concerning the plaintiff. The plaintiff states in his brief that the defendant publishing company "presumably" had no interest in the gubernatorial race or in the plaintiff's poll, "other than as a cold correct news reporting service," nor has plaintiff hypothesized any motive for the publication of the news story even remotely suggesting that this defendant was using its qualified privilege as a mask for accomplishing some malicious purpose of its own.
A somewhat similar case is Pulvermann v. A.S. Abell Co., D.C., 131 F. Supp. 617, affirmed by the Circuit Court of Appeals in an opinion filed January 4, 1956, 4 Cir., 228 F.2d 797, 802. The complaint against the newspaper in that case was that the article held plaintiffs up to the public as "five per centers" and as having been engaged in "crookedness." The use of "crookedness" was in the report of a speech by General Eisenhower. In holding that the lower court did not err in entering summary judgment for the defendant newspaper publisher, even though express malice had been charged against it the Circuit Court of Appeals said:
"The right and duty of newspapers to publish for the benefit of the public matters of this character is well recognized; and, in the age in which we are living, popular government could hardly function if this were not true. Of course, newspapers should be held strictly accountable where they maliciously or recklessly publish false statements for the purpose of injuring candidates or their supporters; but where a high official in the national organization of a political party is dismissed from his position in the party because he has been accused of dealing with the government and where a candidate for the presidency of the country comments on the matter in a public address, it is unthinkable that newspapers should not be allowed to give publicity to the matter without fear of being held to liability therefor in a libel suit. * * *
"Of course the privilege of fair comment as to matters of public concern cannot be used to justify a malicious publication; but we do not think that there is any substantial question of malice for trial in these cases. The nature of the article itself goes far toward negativing the malice alleged, being an objective, factual report of a campaign incident which lent itself readily to a much more lurid presentation."
See also Hall v. Binghampton Press, 1942, 263 App.Div. 403, 33 N.Y.S.2d 840, affirmed 296 N.Y. 714, 70 N.E.2d 537, and Parmellee v. Hearst, 1950, 341 Ill. App. 339, 93 N.E.2d 512, approving the dismissal of complaints for libel against newspapers despite allegations of express malice.
We hold, therefore, that the defendant publishing company was qualifiedly privileged to publish the remarks in question; that the nature of the remarks was such as not to require an inference of malice from the publication thereof; that no extrinsic circumstances have been suggested  nor can be conceived  that would tend to show malice, in fact, on the part of this defendant; and that, in these circumstances, the trial judge did not err in dismissing the plaintiff's complaint as to the defendant publishing company.
*338 As to the defendant Odham, the circumstances are different, insofar as the question of malice is concerned, since there is a difference in the nature of the defamatory remarks charged against this defendant. The complaint charged in its first count that the defendant Odham published and circulated a handbill containing the following matter:
"You Won't Be Bull-Dozed Or Bluffed By Phoney Pollsters. Have you seen the Joe Abram's `Florida Political Survey and Poll' which reported `Johns leading, Collins coming up fast and Odham slipping?' Joe Abram himself once told Brailey Odham and Jim Etheridge of Tampa just how his poll worked. He said that if Odham would give him (Abram) $1500.00 for 1500 `subscribers' to his survey and poll that he (Abram) would see to it that the Odham `friends' received poll ballots and that would assure Odham of `making a good showing in the poll.'"
It is obvious that these statements of the defendant Odham are much more damaging, intrinsically, to the plaintiff than a general statement that the plaintiff was a "phoney pollster". As has been noted, malice is not inferable from the mere fact that the statements are untrue, and in order for the plaintiff to recover he must prove express malice. Coogler v. Rhodes, supra, 21 So. 109. But it is our opinion that if the facts published by the defendant Odham in the handbill, quoted above, were, in fact, deliberately fabricated by the defendant Odham, and the jury so found, they would also have the right to infer that this defendant was motivated by purely personal motives of spite and ill will and also to gain the favor of the voters, regardless of the damage caused to plaintiff by the wilfully false statements. Such improper and unjustifiable motives would, in our opinion, justify a finding of malice in fact, on the part of the defendant Odham, so that the communication would lose its qualifiedly privileged character. Loeb v. Geronemus, supra, 66 So.2d 241, 244.
We hold, then, that as to the defendant Odham the circumstances disclosed by the complaint did not conclusively negative the allegations of express malice made against him by the plaintiff, and that it was therefore error to dismiss the complaint as to this defendant.
Accordingly, the judgment dismissing the complaint as to the defendant Florida Publishing Company is affirmed, and as to the defendant Odham is reversed, and the cause remanded for further proceedings against this defendant.
Affirmed in part and reversed in part.
DREW, C.J., and TERRELL, HOBSON and O'CONNELL, JJ., concur.
THOMAS and THORNAL, JJ., concurring in part and dissenting in part.
THOMAS, Justice (dissenting).
I agree to the opinion so far as the judgment in favor of the Times-Union is concerned, but I think the judgment in favor of the appellee Brailey Odham should also be affirmed.
THORNAL, J., concurs.