PER CURIAM.
We here review a decree of the lower court determining and awarding damages to the plaintiffs-appellees in accordance with the mandate of this court in State ex rel. Rimmeir v. Milledge, Fla.1958, 104 So.2d 355, which required the plaintiffs to make a definite showing of specific damages incurred by them as a result of unfair competitive practices of defendant-appellant heretofore enjoined by this court.
The Chancellor’s decree awarded damages for (1) loss of profits from sales lost in cases where persons purchased awnings from defendant in the belief they were purchasing the product manufactured by plaintiffs, and (2) damage to the value of plaintiffs’ goodwill and trade name and “trademark.”
The evidence on which item (1) was based was that of the plaintiff Horrow, a co-owner of the Miami Awning Shutter Company and sales manager during the period for which damages were sought to be recovered. Horrow testified that his salesmen reported to him many times that they would make an appointment with a prospective customer in response to a call from such customer, only to find upon keeping the appointment that the defendant company [“Sea View” hereafter] had made the' sale. He said that customers would call in and ask for their installation and on ■checking the records he would find that the installation had been sold by Sea View; that in other cases people would complain about a promise to perform some service on their job and the job would turn out to be a Sea View installation. He also said, “On a number of cases, interviewing the people in my show room, when I would say, ‘Now, we make this double row of slat, which is the ventilated awning, and make it out of redwood and aluminum,’ the customer would say, ‘I’ve already gotten my price from Sea View on a ventilated awning.’ ”
Based on these observations of his customers and his salesmen, Horrow estimated that his company lost to Sea View at least one sale for every ten sales made by his company during that period. Since his company sold 24,086 awnings during the period at a net profit of $19.05 per awning, the trial judge assessed damages for loss of profits at $45,891.45.
Remembering that the awning manufactured by Sea View was, in fact, a ventilated awning and that Sea View was not prohibited from describing its awning as “ventilated” except in the few particulars denominated “unfair competition” in our former opinions, see Rimmeir v. Dickson, Fla.1955, 78 So.2d 732; Dickson v. Rimmeir, Fla.1957, 93 So.2d 82; and Rimmeir v. Dickson, Fla.1957, 98 So.2d 787, it is obvious that the number of plaintiffs' lost sales attributable to the unfair trade practices charged against Sea View would be the purest speculation. For example, Horrow testified that his salesmen reported to him that they would visit a prospective customer in response to a request from the customer, only to find that Sea View had already made the sale. It is reasonable to assume that the customer must also have called Sea View. The fact that Sea View’s salesman got there first and made the sale indicates only that Sea View was “on the ball” — not that the. customer purchased the awning in the belief that it was that of the plaintiff company. Again, the fact that a customer in plaintiffs’ showroom stated that he had *374 already gotten a price from Sea View on a ventilated awning does not indicate any confusion in the mind of the customer between Sea View’s and plaintiffs’ ventilated awning.
It is entirely likely that some of the ventilated awnings sold by Sea View might have been sold by plaintiffs if Sea View had not engaged in the unfair trade practices previously enjoined. But, as in Florida Ventilated Awning Co. v. Dickson, Fla.1953, 67 So.2d 215, 217, under the authority of which our former decisions in the instant case were rendered: “* * * we are unable to point out sufficient predicate on which a definite sum could be awarded. Any sum we awarded would he pure speculation. There must be something to authorize or justify a definite amount in damages before it can be awarded. * * *”
There is even less basis in the evidence for the award of damages for “dilution” of plaintiffs’ goodwill and tradename and so-called trade-mark. This award was based on a random survey in which 294 homeowners in Dade County were asked the question, “Can you tell me the name of the company which manufactures the ventilated awning?”, with emphasis on the word “ventilated.” The survey was made in 1958, some five years after the entry of the decree enjoining defendant’s unfair trade practices. Eleven answers were discarded as not responsive to the question. One hundred thirty-eight answered that they didn’t know. Of the remaining 155, 91 named Miami Ventilated Awning (plaintiff company); 44 named Sea View; and 20 named a variety of other awning companies. The plaintiffs contended that this survey proved that at least 28 per cent of the people were confused as to the source of ventilated awnings and that the plaintiffs’ goodwill and tradename and “trademark” had been damaged to this extent. The trial judge sustained this contention and awarded $44,800 as damages for this item, being 28 per cent of $160,000, the purported value of plaintiffs’ goodwill in 1951.
Assuming that each of the persons questioned responded to the word “ventilated” rather than the word “awning” (and this is not a valid assumption, since some of the awning companies named did not manufacture ventilated awnings), it still does not follow that the survey indicates any damage whatsoever to the plaintiffs’ goodwill caused by the defendant’s unfair trade practices (assuming, arguendo, that such damage was recoverable by plaintiffs). As noted above, Sea View did, in fact, manufacture a ventilated awning and was not prohibited from referring to its awning as “ventilated” except in the respects enumerated in our former opinions. At the time of the survey' — some five years subsequent to the date of the decree enjoining defendant’s unfair trade practices — Sea View was still in the business of manufacturing and selling ventilated awnings in Dade County. The persons questioned may have heard of the Sea View awning from purchasers or salesmen thereof; he or she may have observed Sea View’s advertising, in which the word “ventilated” was not entirely prohibited under the decisions of this court. And, in our opinion, it is far more likely that the persons questioned had gained their knowledge of Sea View from one of these sources than from an unfair trade practice engaged in by the defendant some five years prior to the time of the survey. Actually, the survey made no attempt to find out whether the person questioned was a home owner, or even a resident of Dade County, five years previously.
Surveys and polls are inconclusive enough at best and under optimum conditions; cf. Irvin v. State, Fla.1953, 66 So.2d 288; Abram v. Odom, Fla.1956, 89 So.2d 334. And from what has been said above it is clear that the survey in the instant case was not only inconclusive; it failed completely to indicate, one way or the other, the effect on plaintiff’s goodwill of the defendant’s unfair trade prac *375 tices enjoined five years prior to the date of the survey.
Finding no basis in the evidence upon which to predicate any definite amount of damages, and concluding that the award is wholly speculative and conjectural, the decree here reviewed must be reversed under the authority of Florida Ventilated Awning Co. v. Dickson, supra, 67 So.2d 215 and the claim for damages dismissed.
It is so ordered.
TERRELL, C. J., and ROBERTS and HOBSON, JJ., concur.
DREW, J., concurs specially.
THOMAS, J., concurs in part and dissents in part.