**GRANDWAY, Inc., et al v. GRANDWAY SERVICE STATIONS, Inc.**

No. 59 C 8538.

Circuit Court, Dade County.

June 2, 1960.

Paul H. Brinson, Coral Gables, and Paul R. Scott, of Scott, McCarthy, Preston, Steel & Gilleland, Miami, for plaintiffs.

Richard J. Hays, Miami, for defendant.

IRVING CYPEN, Circuit Judge.

This is a suit by the Grand Union Company, a Delaware corporation, and its Florida subsidiaries, Grand-Way, Inc. and Grand Union Supermarkets, Inc., to enjoin the defendant, Grandway Service Stations, Inc., a Florida corporation, from using the name "GRANDWAY" or any combination of letters, words or phrases in which "GRANDWAY" is included.

The Grand Union Company is a large retail chain store enterprise, operating in Florida and other states of the United States. It operates two types of establishments, one which is primarily a food supermarket selling only a small quantity of non-food items in proportion to its foods and meats, and the other, while incorporating a food supermarket, is engaged primarily in the sale at discount prices of non-food items. The latter stores are operated under the name and advertised as "GRAND-WAY Discount Centers", with the play and emphasis in their signs and advertising being made upon the name "GRAND-WAY". The use of this name by plaintiffs dates back to 1939.

While the plaintiffs, through the subsidiary, Grand Union Supermarkets, Inc., have operated their food supermarkets in Florida for several years, they did not open their first "GRAND-WAY" discount center in Florida until October, 1958. This was a store located on N. W. 7th Avenue in Dade County. Since then

they have opened and are operating such stores in Dade, Broward and other Florida counties, including one on N. W. 54th Street in Miami, generally referred to as plaintiffs' 54th Street store.

This suit relates to the "GRAND-WAY" operations of the plaintiffs and their testimony is largely confined thereto. The testimony shows that they spend millions annually in advertising, and in Florida alone have spent some $700,000 in advertising their GRAND-WAY operations since opening their first Florida GRAND-WAY store in October 1958. Their claim that such advertising has resulted in the public associating the name "GRAND-WAY" with their operations is borne out by the testimony. Such trade names, especially where, as here, they become identified in the minds of the public as a reputable concern known for honest merchandising, integrity, fair dealing and low prices for high grade and name brands of merchandise, are valuable assets of the possessor.

Plaintiffs' claim of a proprietary interest in the name "GRAND-WAY" is based not alone in the public concept of their operations as related above, but also upon the fact that they have registered the name "GRAND-WAY" under the Florida Fictitious Name Law; that they hold trade mark registrations for the name "GRAND-WAY" in the United States Patent Office; and that they have used the trade mark "GRAND" on or in connection with the sale of some of their products and hold trade mark registrations covering same.

The testimony shows that plaintiffs are engaged in expanding their "GRAND-WAY" operations in Florida; that each such store requires a large tract of land for buildings and parking facilities and entails a large capital investment.

The plaintiffs claim the right to the exclusive use of the name on account of their prior use of same, their registrations and trade marks, and, particularly, their establishment of the name in the minds of the public as relating to their operations. They claim that the defendant has wrongfully adopted the name and that the use of same by the defendant confuses and misleads consumers into a belief that there is an identity of control or ownership or operation between plaintiffs' and defendant's enterprises; and that to permit the defendant to use the name endangers the good name and reputation of the plaintiffs, and amounts to unfair competition and unfair trade practice.

The defendant, Grandway Service Stations, Inc., is a Florida corporation, chartered February 5, 1959. It is engaged in leasing lands upon which it erects and operates gasoline filling or service stations. At present it has three such stations in operation in Dade County and plans on other stations in Dade and other Florida counties. Its first station was constructed within approximately 265 feet of plaintiffs' 54th Street store. At the time, defendant's officers and stockholders knew of plaintiffs' operations and knew of plaintiffs' acquisition of their 54th Street site and plaintiffs' intention to build and operate a GRANDWAY store thereon. The defendant sells its own brand of gasoline which is registered with the Commissioner of Agriculture of Florida under the names of "Grandway Regular" and "Grandway Ethyl", and it also sells tires, oils, automobile accessories, and other products generally sold in service stations.

The testimony shows some direct competition between the parties in the sale of certain articles, which, at the present, is minor. It also shows some probability that the plaintiffs may enter into the service station business in connection with their GRANDWAY stores.

The testimony fails to convince that the defendant followed such trade practices as would be likely to result in establishing a good reputation; and it is easy to conceive that the good name and reputation of the plaintiffs would be endangered, or could be endangered, by the operations of the defendant. Plaintiffs are entitled to the protection of the courts whenever their good name or reputation is threatened by another. As stated in McCormick v. Feingold, 3 Fla. Supp. 129 (1952, Carroll, J.) — "Under the law of unfair competition, protection will be given if expected future competition is present or even without that, if there is a reasonable danger of injury to reputation and business character and prestige."

And as was said in Great Atlantic & Pacific Tea Co. v. A & P Trucking Corp. (N. J. 1959), 149 Atl. 2d 595 — "Huge sums are expended in advertising both the product and the producer. Goodwill is a sensitive asset, particularly vulnerable today by reason of mobility of population and the media of mass communications. Industrial enterprises tend to diversify, entering fields alien to the area of initial success. Hence the consumer may more easily be misled by identical or simulated marks or names, notwithstanding differences in product, service or geographical area of operation. For this reason, the possessor of a valuable, well-regarded name may experience the ill-repute of

another who employs it, despite the absence of direct competition between them."

The holding of our Supreme Court in Quality Courts United v. Jones, 59 So. 2d 20, might well be applied in this case — "When one has employed an emblem or a legend so as to make it a symbol for a public desire and by acts of courtesy fortifies it with good will, it becomes an elemental part of his business that the law will protect. Many of the great businesses of the country have been built on slogans and symbols that point to superior goods or to superior performance. The volume of good will accumulated with such businesses is one of their most valuable assets. The word 'quality' as applied to appellant's courts was such an asset." The above holding was re-affirmed and adhered to in Rimmeir v. Dickson, 78 So. 2d 732, 737.

Here we are dealing with a trade name long in use by the plaintiffs and only recently adopted by the defendant. The circumstances are such as might justify an express finding that the defendant in selecting the name "GRANDWAY" as a part of its corporate name, did so with the intent of pirating the plaintiffs' trade name. However, we do not find it necessary to make such an express finding for, as stated in 3 Restatement of Torts, page 565 — "The actor may be enjoined for the future despite the fact that he adopted and used his designation in ignorance of the other's trademark."

The testimony herein shows that there has been some confusion in the minds of the public on account of the similarity of names and that same would be likely to cause a large segment of the public to be confused and to assume that the operations of the defendant were a part of the operations of the plaintiffs. Such confusion is likely to be magnified by such acts as the location of defendant's first service station within 265 feet of one of the plaintiffs' GRAND-WAY stores. With both concerns expanding, this confusion would be added to by the erection and operation of other service stations by the defendant in such close, or closer, proximity to plaintiffs' stores; and would be further magnified should the plaintiffs enter into the service station field in connection their GRAND-WAY stores, as is presently under consideration by the plaintiffs. Such confusion should be avoided for the protection of the public and for the protection of the plaintiffs, who have established their prior use and right of use of the name "GRAND-WAY".

The plaintiffs have established by the testimony herein that, through their publicity and build-up, methods of operation, type of operations, trade policies and practices, the name "GRAND-WAY" has created in the minds of the public a concept of a certain type of retail establishment carried on by a reputable and reliable organization selling quality merchandise at discount prices. This public concept, attained in part through continuous and expensive advertising and long range policies and practices, is a part of the good will and reputation of the plaintiffs and constitutes a valuable asset, which plaintiffs are entitled to have protected. See Florida Ventilated Awning Co. v. Dickson (Fla. 1953), 67 So. 2d 215.

It appears to the court that the plaintiffs have clearly established their right to the use of the name "GRAND-WAY" and that such right is entitled to the protection of the court. To hold otherwise would be to sanction unfair trade practices and unfair competition by the defendant and against the plaintiffs, and would give sanction to the appropriation by the defendant of the established trade name of the plaintiffs.

The court finds no merit in defendant's contention that it is entitled to the name "Grandway Service Stations, Inc." on account of the fact that such name was approved and granted to it by the secretary of state in approving its certificate of incorporation. "The grant of a corporate charter by the state can confer no power to perpetrate wrong. The act of sovereignty in allowing incorporation under a particular name is permissive only. It sanctions the act of incorporation under the name chosen and for the business proposed, if that name and that business be otherwise lawful, but in granting a corporate charter the sovereign adjudges neither the legality of the business nor of the name chosen. That is a matter for judicial determination by a court of competent jurisdiction." Children's Bootery v. Sutker (Fla. 1926), 107 So. 345, 349.

In view of the foregoing, it is the conclusion of this court that the plaintiffs are entitled to a permanent injunction enjoining and restraining the defendant, Grandway Service Stations, Inc., a Florida corporation, its officers, directors, stockholders, agents and employees, from selling products, advertising under, doing business or in any way using the names "GRANDWAY", "GRANDWAY SERVICE STATIONS", "GRANDWAY GAS", or under any combination of letters, words or phrases in which the word "GRANDWAY" is included; and the court has so ordered.