## BAIR v. PALM BEACH NEWSPAPERS, INC.
### Case No. 76-4394 CA (2) 01 A
Fifteenth Judicial Circuit, Palm Beach County
June 1, 1982

Eugene M. Underberg, for plaintiff.

Donald M. Middlebrooks, Thomas R. Julin, Steel Hector & Davis, Florence Beth Snyder, for defendant.

LEWIS KAPNER, Circuit Judge.

This action was heard on Palm Beach Newspapers, Inc.'s Motion for Summary Judgment. The Court heard arguments of counsel, considered the memorandum of law submitted by the defendant, the affidavits filed by the plaintiff, and reviewed the news articles in question.

It is undisputed that on December 12, 1974, the Plaintiff, Ronald Bair, was dismissed from his job as an outpatient counselor for LINK, a publicly-supported drug abuse treatment program. According to Marvin Clark, the executive director of LINK, Bair was dismissed for misrepresentation of his academic background in connection with his application for employment.

On December 13, 1974, articles appeared in the *Palm Beach Post* and the *Palm Beach Daily News,* newspapers owned by the defendant, Palm Beach Newspapers, Inc. These articles describe the firing of Ronald Bair and report certain statements made in that connection by Marvin Clark. The plaintiff concedes that Marvin Clark actually made the statements attributed to him and that the articles accurately report the comments. However, the plaintiff disagrees with Marvin Clark's conclusion, reported by the defendant, the plaintiff's claimed academic credentials, including a D.D. degree from an Ohio Divinity Institute, a Th.D. from Zion Theological Seminary and a Ph.D. from Thomas Edison College in West Palm, "looked more impressive than they actually were" and constituted a "misrepresentation."

Subsequent to publication of the articles, the plaintiff filed two lawsuits, one against Palm Beach Newspapers, Inc. based upon the *Post* article and a second against *Palm Beach Daily News,* based upon the *Daily News* article. *Palm Beach Daily News* is not a legal entity and that proceeding, Case No. 76-1402 CA (L) 01H, was dismissed for lack of prosecution. On June 28, 1978, a stipulation was filed in this proceeding, against Palm Beach Newspapers, Inc., permitting the plaintiff to file an amended complaint. On January 22, 1979, the plaintiff filed an amended complaint which added in this proceeding a count based upon publication of the *Daily News* article.

Based upon review of the undisputed facts and applicable law, the Court concludes that summary judgment should be entered on three separate grounds: (1) the news articles are substantially true; (2) the publication is privileged by reason of the common law qualified privilege accorded to reporting about events of public concern, the "actual malice" standard applicable to such matters, and the doctrine of neutral reporting; and (3) the claim based upon the *Daily News* article is barred by the statute of limitations.

## (1) SUBSTANTIAL TRUTH

Florida's Constitution provides that "[i]n all civil . . . actions for defamation the truth may be given in evidence. If the matter charged as defamatory is true and was published with good motives, the party shall be . . . exonerated." Article I, Section 4, Florida Constitution. Precise accuracy is not required for a defendant to succeed in a truth defense; all that is necessary is that the publication be "substantially accurate," *Florida Publishing Co. v. Lee,* 76 Fla. 405, 80 So. 245, 246 (Fla. 1919). "[N]ewspapers are not to be held to the exact facts or to the most minute details of the transactions they publish[.] . . . [W]hat the law requires is that the publication shall be substantially true, and that mere inaccuracies, not affecting materially the purport of the article, are immaterial." *McCormick v. Miami Herald Publishing Co.,* 139 So.2d 197, 200 (Fla. 2 DCA 1962) (quoting 53 C.J.S., Libel and Slander §122 (19480.) ). "A workable test is whether the libel as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.* at 200. When the portions alleged to be false are excised from the article and what remains gives the same impression, there is no actionable libel.

Review of the news articles in light of the undisputed facts requires the conclusion that the publications are substantially accurate. It is conceded that the plaintiff was fired and the reason given for the dismissal was that he had misrepresented his credentials. Moreover, the

degrees claimed by the plaintiff are readily susceptible to the view that a misrepresentation was involved. While the plaintiff may be able to say that he technically told the truth in claiming the degrees, the nature of the degrees conveyed the wrong impression in a way that fairly can be called a "misrepresentation."

## (2) PRIVILEGE

Even if the articles could be viewed as containing defamatory untruths, summary judgment would still be required by application of the common law qualified privilege accorded by Florida law, the "actual malice" standard applicable to events of general or public concern, and the doctrine of neutral reporting.

### Common Law Qualified Privilege

Two cases involving the common law qualified privilege to report upon a public matter have a special significance to this case because they involve republication by the media of the statement of another.

In *Layne v. Tribune No.,* 108 Fla. 177, 146 So. 234 (1933), a newspaper reproduced a wire service article alleging that a congressman and his secretary, the plaintiff, were indicted for the possession of whiskey. The article failed to state that the indictment had been dismissed. Recognizing the media's significant function of rapid news dissemination, the Florida Supreme Court held that a newspaper has a qualified privilege to publish "purely news items, simply reproduced from apparently reliable sources of information, without carelessness or recklessness in their publication, and without any showing of malice or intent to harm the individual written about." *Id.* at 188, 146 So. at 238.

An analogous factual situation is found in *Abram v. Odham,* 89 So.2d 334 (Fla. 1956). The newspaper defendant quoted a political candidate as saying the plaintiff, a political pollster, "is a phony and his poll is a phony." The Court concluded that even if the candidate's remarks might have been defamatory the newspaper had no liability:

> The defendant publishing company gave a fair and accurate account of the remarks made by the [co-] defendant Odham at a political rally, in accordance with its qualified privilege to publish matters of great public interest.
>
> *Id.* at 336.
> [citation omitted.]

Since there was no evidence that the newspaper was acting "other than as a cold correct news reporting service," the Florida Supreme

Court affirmed the trial court's dismissal of plaintiff's complaint against the publishing company. *Id.* at 337.

In this case, the circumstances squarely point to application of this privilege.

The matter in controversy must be regarded as a matter of public concern. The Florida Supreme Court has stated that

> matters of public or general concern are those which invoke common and predominant public activity, participation or indulgence; and cogitation, study and debate; and they include such matters as sporting events, the performing and fine arts, morality and religion, the sciences, and matters relating generally to the health, well-being and general comfort of the public as a whole.

*Firestone v. Time, Inc.,* 271 So.2d 745, 749 (Fla. 1972).

LINK is a "publicly-supported foundation whose purpose was to respond to two of the most critical social problems of our time, drug abuse and alcoholism." *Bair v. Clark,* 397 So.2d 926, 927 (Fla. 4th DCA 1981). The qualifications of a counselor working in this program, supported by tax dollars and involved in sensitive public health issues, is surely a matter of general or public concern considering the connection between his dismissal and the investigation and litigation involving Thomas A. Edison College and its president, Dr. George Lyon. Just prior to the Bair dismissal, the Florida Board of Independent Colleges and Universities filed suit against Thomas Edison College accusing Dr. Lyon of selling advanced college degrees for $100. This matter was legitimately the subject of significant public interest in the Palm Beach area. The dismissal of Bair upon discovery that he held a Thomas Edison Ph.D. degree in psychology was likewise a matter of public concern.

In view of the public nature of the controversy, the defendant's accurate and disinterested reporting of the dismissal and the comments of Marvin Clark is qualifiedly privileged.

In the case of communications which are qualifiedly privileged, there can be no recovery unless express malice is shown. *Abram v. Odham, supra* at 336. Express malice is malice in fact as distinguished from implied malice, and is defined as ill will, hostility, and an evil intention to defame and injure. *Montgomery v. Knox,* 23 Fla. 595, 3 So. 211, 217 (Fla. 1887). In cases of conditional privilege the presumption is that express malice is not present. *White v. Fletcher,* 90 So.2d 129, 131 (Fla. 1956). The burden of proof is changed and the plaintiff to recover must

affirmatively demonstrate the presence of malice. *Abram v. Odham, supra* at 336. *See also, Coogler v. Rhodes,* 38 Fla. 240, 21 So. 109 (Fla. 1897). The plaintiff has come forward with no indication that malice is present in this case and indeed, at the hearing on summary judgment, plaintiff's counsel conceded the record was bare of any such proof.

"Actual Malice" Standard

In addition to the common law qualified privilege applicable to this case, the plaintiff has the further obligation to demonstrate "actual malice" in the constitutional sense.

In 1971, the United States Supreme Court held that the *New York Times* actual malice burden of proof applied to private individual libel plaintiffs, where the alleged defamatory falsehood involved a matter of public or general interest or concern. *Rosenbloom v. Metromedia,* 403 U.S. 29 (1971).

The *Rosenbloom* standard was adopted and applied by the Florida Supreme Court in *Firestone v. Time, Inc.,* 271 So.2d 745 (Fla. 1972).

This decision sets forth Florida's constitutional standards for determining what constitutes "matters of public or general concern."

> [W]e perceive a clear distinction between mere curiosity, or the undeniably prevalent morbid or prurient intrigue with scandal or with the potentially humorous misfortune of others, on the one hand and real public or general concern on the other.
>
> 271 So. 2d at 748.

Accordingly, news items or featured articles or commentaries by communications media relating to these matters are and should be constitutionally protected notwithstanding that obscure or prominent individuals may be caught up in the current and regretfully defamed. 271 So.2d at 748, 749.

The Florida court then proceeded to adopt a test to guide trial courts in determining what news stories were entitled to the protection of the actual malice standard, announcing the test in Florida to be as follows:

> [W]e think that as a workable test the question is whether there is a logical relationship between the reported activities of the prominent person or between the subject matter of the conduct, occasion or event reported or recorded, and the real concern of the public.
>
> 271 So.2d at 751.

This question, the Court states, is a question of law for, "[t]hus a publisher need not gamble on whether a given jury may reject as unreasonable his decision that a proposed publication involves a matter of public or general concern." 271 So.2d at 751.

Thus, the Court in *Firestone* adopted for Florida the test of "matters of public or general concern" and, where there is a "logical relationship," between the publication and the issue of concern, actual malice must be shown. The U.S. Supreme Court later retreated from the *Rosenbloom* decision in *Gertz v. Robert Welch, Inc.,* 418 U.S. 323 (1974). There, the Court held that so long as the states did not impose liability without fault, they were free to define for themselves the appropriate standard of liability for a publisher or a defamatory falsehood which injured a private individual. 418 U.S. at 345-47.

After *Gertz* was decided, the Florida Supreme Court again dealt with the *Firestone* case in *Firestone v. Time, Inc.,* 305 So.2d 1972 (Fla. 1974).

This was the occasion for the Florida Court to abandon its earlier *Firestone* opinion setting out the doctrine of "matters of public or general concern." The Court did not do so. Instead, it cited the language of *Firestone* and adhered to its earlier opinion. 305 So. 2d at 175.

This matter of Florida constitutional law was recently recognized in a defamation action styled *Sobel v. Miami Daily News, Inc.,* 50 Fla.Supp. 70, 5 Med.L.Rptr. 2462 (Dade County 1980). In granting summary judgment against a plaintiff the court assumed a "private figure," the court stated:

> Since the articles and editorials in question dealt with matters of legitimate public interest, the plaintiff is required to plead "actual malice," as the term has been defined in *New York Times Co. v. Sullivan, supra,* and its progeny, *Abrams v. Odham,* 89 So. 2d 334 (Fla. 1956).

5 Med.L.Rptr. at 2464-65.

This decision was affirmed *per curiam* by the Third District Court of Appeal. 395 So.2d 282 (1981).

Under the "actual malice" standard no liability can exist without proof that the defendant had actual knowledge of falsity of the publication or "entertained serious doubts as to the truth of his publication." *New York Times v. Sullivan,* 376 U.S. 254 (1966); *St. Amant v. Thompson,* 390 U.S. at 731 (1968). No such proof exists in this case.

Neutral Reporting

The news articles are further protected by the doctrine of "neutral reporting." The case most identified with this privilege is *Edwards v. National Audubon Society, Inc.,* 556 F.2d 113 (2d Cir.), *cert. denied,* 434 U.S. 1102 (1977). The National Audubon Society magazine published an article claiming that some scientists had misapplied the Audubon Society's data about wildlife and the effect of the insecticide DDT. They were called "paid liars." A *New York Times* reporter requested and received, from an officer of the Society, a list of scientists who were believed to have been paid to lie. The newspaper article reported the allegation of the Society's magazine, the names of the scientists, and the scientist's denials. Three of the scientists sued for libel. The trial court, finding the plaintiffs to be public figures, applied the *New York Times* actual malice standard. A jury verdict was entered in favor of the Society, but against the newspaper defendants. Reversing the verdict against the newspaper, the Second Circuit Court of Appeals stated that:

> The public interest in being fully informed about controversies that often rage about sensitive issues demands that the press be afforded the freedom to report such charges without assuming responsibility for them.
>
> *Id.* at 120.

The court determined that the fact that accusations were made was in itself newsworthy, and held that the "First Amendment protects the accurate and disinterested reporting of those charges, regardless of the reporter's private views regarding their validity." *Id. See also, Wade v. Stocks,* 7 Med. L. Rptr. 2200 (Cir. Ct., Franklin County 1981); *Krauss v. Champaigne News Gazette,* 373 N.E.2nd 1362 (Ill.App. 1978); *Whitaker v. Denver Post,* 4 Med.L. Rptr. 1351 (D.Wyo. 1978); *Campo Lindo for Dogs, Inc. v. New York Post Corp.,* 4 Med.L.Rptr. 1826 (N.Y.App.Div. 1978).

The neutral reporting privilege, stemming from the First Amendment protection of news dissemination about important public issues and public officials, has foundational support in Florida's common law qualified privileges, discussed above. The neutral reporting doctrine is applicable to a case such as the one in issue, where a news article has merely related statements made by a responsible official concerning a matter of public concern. Because Mr. Clark made the statements about Mr. Bair in connection with a controversy about which the media has a privilege to report, the accurate reporting of the statements, is protected by the First Amendment.

### (3) STATUTE OF LIMITATIONS

Count I of the amended complaint which pertains to the *Daily News* article is subject to an additional infirmity.

The news article which appeared in the *Palm Beach Daily News* was published December 13, 1974. Section 95.11, Florida Statutes, provides that an action for libel or slander must be commenced within four years. On January 22, 1979, the plaintiff filed an amended complaint against Palm Beach Newspapers, Inc. adding, for the first time, a count for defamation against the defendant based upon the news article which appeared in the *Daily News*. Since this claim was commenced more than four years from publication it is barred by the statute of limitations. *See, Livingston v. Malever,* 103 Fla. 200, 137 So. 113 (Fla. 1931); *La Floridienne, etc. Societe Anonyme v. Atlantic C.L.R. Co.,* 63 Fla. 213, 58 So. 186 (Fla. 1912); *Louis v. South Broward Hospital District,* 353 So.2d 562 (Fla. 4 DCA 1977).

In seeking to avoid the statute's application the plaintiff refers to a stipulation between counsel filed June 28, 1979, which permitted the plaintiff to file an amended complaint in this proceeding. The plaintiff alleges that it was the purpose of the stipulation to allow an amendment to add the count pertaining to the *Daily News*.

However, the stipulation cannot be viewed as waiving the statute of limitations. At the time the stipulation was filed, six months remained before the statute ran. Despite the stipulation in June, the plaintiff failed to amend until January, 1979,—after the four year statute had run. The claim is therefore barred by the statute of limitations.

### CONCLUSION

For the foregoing reasons, it is therefore adjudged that final summary judgment is entered for the defendant; that plaintiff Ronald Bair, take nothing by this action and that defendant Palm Beach Newspapers, Inc. go hence without day.